Víctor Manuel y Manuel Isidro Sosa y Millán, demandantes y apelantes, *v.* Juan Isidro Sosa Escobar, et al., demandados y apelados.

Núm. 8973.—*Sometido:* Noviembre 9, 1944. *Resuelto:* Abril 10, 1945.

*Ricardo H. Blondet,* abogado de los apelantes; *Heriberto Torres Solá,* abogado de la apelada Celestina Sosa Vizcarrondo; *Heriberto Torres Solá y Gabriel de la Haba,* abogados del apelado Antonio R. Matos; *Frank Martínez, M. A. García del Rosario y Sebastián García Díaz,* abogados de los apelados Federal Land Bank of Baltimore y The Land Bank Commissioner; *Sifre, Franceschi & Sifre,* abogados de la apelada Loíza Sugar Company; *C. Coll y Cuchí,* abogado del apelado Marcial Suárez.

Opinión del Juez Asociado Señor Todd, Jr., con la cual concurre el Juez Presidente Señor Travieso.

No estando conforme con la doctrina establecida en el caso de *Ex parte Ortiz y Lluberas,* 42 D.P.R. 350 en cuanto a que los hijos adoptivos son herederos forzosos, doctrina ratificada en *Bardeguez v. Bardeguez,* 48 D.P.R. 713, soy de

opinión que la corte inferior no erró al desestimar la demanda en este caso. Los hechos envueltos en el mismo están ampliamente expuestos en la opinión del Juez Asociado Sr. Snyder. Debido a que la división de criterio que existe en el tribunal en cuanto a esta importante cuestión deja subsistente la doctrina establecida en los casos mencionados hasta que una mayoría del tribunal pueda ratificarla o revocarla, precisa que exponga, en términos generales, mis puntos de vista sobre la materia.

La condición de forzoso la tiene un heredero no sólo porque el artículo 736 del Código Civil específicamente determina quiénes lo son, sino porque el artículo 735 previamente ha definido el concepto de legítima diciendo que es "la porción de bienes de que el testador no puede disponer por haberla reservado la ley a determinados herederos, *llamados por esto herederos forzosos*", y porque además en los artículos 737 y 738 se determina claramente lo que constituye la legítima de los hijos y descendientes legítimos y la de los padres o ascendientes, respectivamente, y en los artículos 761 a 764 y 767 a 772, se determina asimismo lo que constituye la del cónyuge viudo y la de los hijos naturales reconocidos, respectivamente. "Todos los herederos no forzosos son herederos *voluntarios*: el testador los elige con arreglo a su voluntad." 6 Manresa, Código Civil, 630.

El obstáculo insuperable en el caso de autos consiste en que por más que se rebusque en nuestro Código no se encuentra la legítima que corresponde a los hijos adoptivos para que puedan tener el concepto de herederos forzosos.

Parece olvidarse el hecho de que si un heredero tiene la condición de forzoso es precisamente porque puede, en la sucesión testada, reclamar su legítima si ésta le ha sido afectada en alguna forma en el testamento. Si se establece y acepta la premisa de que a los hijos adoptivos nuestro Código no les reconoce ninguna parte de la herencia como legítima ni tampoco se les incluye entre aquéllos que de

acuerdo con el artículo 736 son herederos forzosos, ¿qué base hay para afirmar y resolver que, a pesar de todo esto, sí son herederos forzosos? Se afirma que así debe ser interpretado el alcance de los artículos 132 y 133 del Código Civil y la intención legislativa al adoptarlos del artículo 214 del Código Civil de Louisiana. Diferimos de este criterio por varias razones.

En primer término los artículos 132 y 133 no son una copia exacta del artículo 214 de Louisiana pues nuestra Legislatura varió sustancialmente sus conceptos y añadió frases completas que no existen en el Código de Louisiana. Así vemos que mientras el artículo 214, en lo pertinente, se limita a decir:

"Any person may adopt another as his child, except those illegitimate children whom the law prohibits him from acknowledging; but such adoption shall not interfere with the rights of forced heirs.

\* \* \* \* \* \* \*

"The person adopted shall have all the rights of a legitimate child in the estate of the person adopting him except as above stated.";

el artículo 132, queriendo hacer más específica la intención legislativa dice: "La adopción no perjudicará *en ningún caso* los derechos que correspondan a los herederos forzosos, *y que subsistirán como si la adopción no se hubiese verificado.*" Asimismo mientras el artículo 214 habla de *herencia* "*estate,*" nuestro artículo 133 dice que "El adoptado tendrá en la *familia* del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior." (Bastardillas nuestras.)

No estoy conforme con la afirmación de que la palabra "familia" significa lo mismo que "herencia" o como se dijo en *Ex parte Ortiz y Lluberas,* supra, que "En cualquier concepto de sucesión universal, la palabra 'familia' significa *infinidad de cosas. Probablemente comprenda la idea de tal sucesión universal.*" (Bastardillas nuestras.) En materia tan importante como la determinación de derechos sucesorios no debemos resolver a base de que dicha palabra pueda sig-

nificar "infinidad de cosas" o dejarlo en el campo indefinido e indeterminado de las "probabilidades".

En el mismo caso de *Ex parte Ortiz y Lluberas,* supra, se afirma que es significativo que nuestra Legislatura suprimiera de nuestro Código Civil el artículo 177 del Código Civil Español.([1]) Lo verdaderamente significativo es que dicho artículo no fué por completo eliminado del nuestro sino que en el artículo 137 se conservó expresamente su última oración que dispone que "El adoptado conservará los derechos que le correspondan en su familia natural, a excepción de los relativos a la patria potestad." ¿Qué significación hemos de darle a esta actuación legislativa? De acuerdo con *Ex parte Ortiz y Lluberas,* supra, tenemos el hecho extraordinario de que el hijo adoptivo tiene el concepto de heredero forzoso en su familia natural (como en realidad lo tiene) y por añadidura el de heredero forzoso en la familia del adoptante. Es en verdad, de acuerdo con esta interpretación, el heredero forzoso más privilegiado.

En mi opinión, el artículo 137 es de suma importancia cuando tratamos de fijar la intención legislativa al aprobar el artículo 133. Comentando Scáevola la disposición final del artículo 177 del Código Civil de España, concordante con el artículo 137 del nuestro, dice: "¿Y cuáles serán estos derechos? 1º. El de recibir alimentos si el adoptante no pudiese suministrárselos. Ya hemos dicho que el derecho a los alimentos no se borra cuando se extingue la patria potestad, tiene su razón de ser en la necesidad y en los lazos de la sangre. 2º. El de usar el apellido de la familia natural. 3º. El de recibir donaciones por actos intervivos, quedando obligado a imputarlas en la legítima. 4º. *El de suceder por*

---

([1])"El adoptante no adquiere derecho alguno a heredar al adoptado. El adoptado tampoco lo adquiere a heredar, fuera de testamento, al adoptante a menos que en la escritura de adopción se haya éste obligado a instituirle heredero. Esta obligación no surtirá efecto alguno cuando el adoptado muera antes que el adoptante. El adoptado conserva los derechos que le corresponden en su familia natural, a excepción de los relativos a la patria potestad."

*testamento.* `5°.` *El de poder ser mejorado.* `6°.` *El de suce-*
*der abintestato.* `7°.` *El de pedir complemento de la legítima*
*si el testador le hubiere dejado menos porción de la que nece-*
*sariamente le corresponda.* `8°.` El de que le sean reservados
los bienes del consorte difunto si el superviviente pasase a
segundas nupcias. `9°.` El de acrecer la porción del heredero
en los casos marcados por el Código. `10°.` El de recibir la
herencia a beneficio de inventario o haciendo uso del de deli-
berar. `11°.` El de desempeñar la tutela en los casos en que
fuere llamado por la ley a este cargo, y el de formar parte
del Consejo con respecto a los parientes de su familia natu-
ral.'' (Bastardillas nuestras.) 3 Scaevola, Cód. Civil, 449,
3ra^a. edición.

Más conciso, pero al mismo efecto, Sánchez Román en sus
Estudios de Derecho Civil, Tomo 5, pág. 1106 (Segunda
Edición), dice que ''Esos derechos que el adoptado conserva
en la familia natural, son todos: tales, como el de alimentos,
cuando el adoptante no pudiera proveer a esta obligación,
el de usar el apellido de la familia *así como todos los suceso-*
*rios, en sus distintas aplicaciones,* y, en general, cuantos el
Código atribuye a la condición de individuo de una familia,
excepto los relativos a la patria potestad, mientras el adop-
tante la ejerce.'' (Bastardillas nuestras.)

Tenemos, por lo tanto, que el hijo adoptivo, a virtud del
artículo 137, conserva todos sus derechos en su familia na-
tural. Empero el artículo 133 dispone que él tendrá en la
familia del adoptante ''los derechos y deberes y la conside-
ración de un hijo legítimo,'' y se sostiene que esto es sufi-
ciente para resolver que entre esos derechos están los de un
heredero forzoso en la sucesión testada del adoptante, porque
de acuerdo con el artículo 118 el hijo legítimo tiene derecho
a la herencia legítima y como consecuencia el adoptivo tam-
bién tiene derecho a una ''legítima'' en la herencia del
adoptante. No acepto esta conclusión por las razones que he
expuesto en cuanto a la omisión de asignársele al hijo adop-

tivo en nuestro Código una cuota legítima y de no incluírsele además entre los herederos forzosos especificados en el Código y además porque disponiendo el artículo 136 que si bien el adoptante y el adoptado se deben recíprocamente alimentos, limita el derecho diciendo que "Esta obligación se entiende sin perjuicio del preferente derecho de los hijos legítimos, de los ilegítimos, y de los ascendientes del adoptante a ser alimentados por éste."

Si por el artículo 132 se dispone que la adopción en ningún caso perjudicará los derechos que corresponden a los herederos forzosos, los cuales subsistirán como si la adopción no se hubiera verificado, y por el artículo 136 se subordina el derecho a alimentos del hijo adoptivo al derecho preferente, no ya de los hijos legítimos y ascendientes del adoptante sino también a los de sus hijos *ilegítimos* en general,[2] ¿cómo puede sostenerse que fué la intención legislativa, aun cuando usara las palabras "hijo legítimo" en el artículo 133, convertir al adoptivo en un heredero forzoso en la sucesión testada?

Se dirá, y con razón, que algún fin tuvo la Legislatura al adoptar el lenguaje especial del artículo 133 (muy distinto al usado en el artículo 214 de Louisiana) y relacionado con el artículo 132 (más específico que el 214 de Louisiana). En mi opinión la única interpretación lógica es que los derechos del adoptivo hay que situarlos en la sucesión intestada y aun en ella en el sitio o puesto que le corresponda, es decir, después de los que, en el abintestato son llamados preferentemente (y que en la testada tienen el carácter de forzosos) o sea los descendientes legítimos, los ascendientes, los hijos naturales reconocidos y respetando la cuota usufructuaria del viudo. A igual solución llega Sánchez Román al confrontárse con el problema que presenta el artículo 177

---

[2] "Es de notarse que el artículo 176 del Código Civil de España limita ese derecho preferente a los hijos naturales reconocidos y a los ascendientes del adoptante.

del Código Civil Español al no asignar al hijo adoptivo un puesto para hacer efectivo su derecho sucesorio cuando el adoptante se ha obligado a instituirlo heredero en la escritura de adopción. Los derechos de los herederos forzosos en la sucesión testada y los llamamientos preferentes en la intestada y la misma explícita preferencia que por la obligación alimenticia establece el artículo 176 (artículo 136 del nuestro) le hacen concluir que: "hacen imposible, en buena lógica legal, suponer que los hijos adoptivos, en el único caso en el que excepcionalmente les reconoce derecho a heredar *fuera de testamento* al adoptante el artículo 177, que ahora se examina, puedan y deban ser *antepuestos* a ninguno de los llamamientos de todas esas personas, ni tampoco *concurrir* con ellos en la sucesión intestada del adoptante, puesto que no hay porción ni forma determinada al efecto, y aquéllos vienen llamados a suceder en esos lugares preferentes en *toda* la herencia; no siendo imposible la hipótesis de descendientes legítimos y legitimados, a pesar de la prohibición de adoptar del núm. 2°. del artículo 174 a los que tienen descendencia de esta clase, porque puede haber sobrevenido después de la adopción, toda vez que, el haber realizado ésta no es impedimento para contraer matrimonio con posterioridad. En cambio, parece, que de ser de alguna manera efectivo ese derecho condicional e hipotético, que el artículo 177 reconoce por excepción al adoptado para suceder fuera de testamento al adoptante que prometió instituirle heredero en la escritura de adopción, sería lo más racional introducir su llamamiento antes de los de colaterales de todos los grados (artículos 946 a 955), y sin perjuicio del derecho del cónyuge viudo (artículo 834 y sus concordantes), ya que ni tienen los colaterales la condición de herederos forzosos, ni siquiera el derecho de alimentos, que no existe más que con carácter excepcional entre los hermanos. (Párrafo final del artículo 143.)"[3]

---

[3] "Sánchez Román, ob. cit. págs. 1104, 5, nota (3). En el mismo sentido se expresa Scaevola diciendo:

En la legislación anterior el Código Civil de España al hijo adoptivo tampoco se le reconoció su posición como here-dero forzoso en la sucesión testada. Las Leyes de Partida y el Fuero Real le reconocían el todo o parte de la herencia en la sucesión intestada.(⁴)

"El silencio del Código Civil nos conduce de la propia manera a sostener el preferente derecho de los ascendientes y de los hijos naturales reconocidos en la sucesión intestada, a pesar de la promesa hecha al adoptado de instituirle heredero. Pero hay además un artículo, ya comentado, que da, por decirlo así, la clave de la intención del legislador, cuya intención pretendemos adivinar para suplir el hueco de su olvido. Este artículo es el 176. Se ocupa, como hemos visto, de la obligación recíproca de adoptante y adoptado, de suministrarse alimentos, efecto primero y principal de la adopción. Sin embargo, tienen la preferencia sobre el hijo adoptivo los descendientes e hijos naturales reconocidos. Ya no se trata de un derecho cuyo nacimiento pende del arbitrio del adoptante, como lo es el que nace de la promesa de instituirle heredero, sino del deber que constituye el alma de la adopción. Y si respecto de los alimentos son preferidos el ascendiente y el hijo natural del adoptante, ¿cómo no han de serlo en la sucesión intestada?

"Rota ya en éstos la cadena de la sucesión forzosa, si la promesa se hizo, bien se ve que la voluntad del adoptante es que su hijo adoptivo sea preferido a los colaterales y aun al cónyuge viudo, quien no obstante conservará, en nuestro sentir, el derecho al usufructo de su porción legal señalada por la sección 7ª. del capítulo II, tít. III, libro tercero La distancia que separa a los colaterales, la inexistencia de deberes recíprocos, siquiera entre hermanos legítimos medie la de alimentos en caso de extrema necesidad, el no estar declarados como herederos forzosos, todo concurre a preferir al hijo adoptivo, reservándole este lugar intermedio en la sucesión intestada, mucho más cuando la voluntad del adoptante se mostró en la escritura de adopción por virtud de la promesa solemne hecha al adoptado de instituirle su heredero.

"Así es que, en el supuesto que hemos presentado y que ha sido el motivo del presente análisis, es a saber, el de la concurrencia del hijo adoptivo con descendientes nacidos después de la adopción, ascendientes, hijos legitimados por concesión real y naturales reconocidos, el hijo adoptivo, a pesar de la promesa hecha en la escritura de adopción de instituirle heredero, *nada adquirirá.*" Scaevola, ob. cit., tomo III, 3ª. edición, págs. 445, 6.

(⁴) Comentando dicha legislación dice Manresa:

". . . Era doctrina corriente, fundada en las leyes 5ª., tít. 6to., libro 3ro., y 1ra., tít. 22, libro 4to., del fuero Real; 8va. y 9na., tít. 16 de la Partida 4ta., y 1a. y 7a., tít. 20, libro 10 de la Novísima Recopilación, *que el adoptado era heredero abintestato del adoptante que no tenía descendientes ni ascendientes legítimos o naturales; pero no se le concedía porción legitimaria, y podía ser pretérido en testamento. . . .*" (Bastardillas nuestras.) Manresa, Comentarios al Código Civil Español, 2da. ed., Tomo II, pág. 71.

Concuerda la conclusión a que he llegado con la del Sr. Muñoz Morales expuesta en sus Anotaciones al Código Civil de Puerto Rico, vol. X Revista Jurídica de la Universidad de Puerto Rico, página 433, cuando dice que "Ya que nuestra Legislatura optó por restablecer la antigua doctrina, nos inclinamos a la declaración del derecho en la forma incondicional que reconocieron las leyes de Partida . . ." pues esos derechos se referían exclusivamente a la sucesión intestada. Dice expresamente dicho autor al comentar los casos de *Ex parte Ortiz y Lluberas* y *Bardeguez* v. *Bardeguez*, supra, que "se deduce de ambas decisiones cierta incertidumbre en cuanto al absoluto derecho hereditario de los adoptivos y no sabemos cuál sería el criterio del tribunal en caso de existir ascendientes o de existir hijos nacidos después de la adopción" y que "Sería conveniente, pues, que en nuestro Código se introdujeran las enmiendas consiguientes para aclarar estas dudas y se incluyeran expresamente entre los herederos forzosos a los hijos adoptivos, ya equiparándolos a los legítimos y legitimados o ya a los naturales reconocidos." Es más, sostiene que de acuerdo con el caso de *Ex parte Ortiz y Lluberas*, "Cuando el padre adoptante deja descendientes y ascendientes, el hijo adoptivo no tiene derecho a heredarle," y que "Cuando el adoptante fallece intestado, sobreviviéndole un ascendiente (padre, madre, abuelo, etc.) éste excluye de su herencia al hijo adoptivo." Ob. cit., pág. 437.

Es por estos motivos que no puedo concurrir con el resultado a que se llega al afirmarse que la intención legislativa al adoptar en el año 1902 los artículos 132 y 133 del Código Civil fué la de reconocer a. los hijos adoptivos como herederos forzosos. Es posible que tuviera esa intención, empero, al dejar subsistentes, entre otros, los artículos 136 y 137, al no asignarles una legítima y al no incluirles entre los herederos forzosos enumerados en el artículo 736, a pesar de que expresamente enmendó este último artículo en el año

1905 o sea tres años después de haber adoptado los artículos 132 y 133, fracasó en su intento. Admito que la jurisprudencia de Louisiana por interpretación, reconoce a los hijos adoptivos ciertos derechos hereditarios en la sucesión testada del adoptante. No creo que estemos obligados a seguir dicha jurisprudencia cuando la fraseología de los artículos 132 y 133 de nuestro Código es distinta a la del artículo 214 de Louisiana y cuando de acuerdo con nuestro Código el hijo adoptivo conserva los derechos que le corresponden en su familia natural, cosa que no sucede en Louisiana.

Un ejemplo palmario de la contradicción a que habría que recurrir para resolver el caso de autos lo tenemos en el hecho de que, según la opinión del Juez Asociado Sr. Snyder, aun cuando sostiene, siguiendo lo resuelto en el caso de *Bardeguez* v. *Bardeguez,* supra, que por no ser el hijo adoptivo un descendiente en línea recta, no es un descendiente legítimo y por tanto no debe aplicarse el artículo 767 del Código Civil, a renglón seguido dice que sí es aplicable el artículo 737 que precisamente es el que fija la legítima de los hijos y descendientes legítimos y afirma que al aplicar este último artículo en relación con el 769 se cumple con la intención legislativa. Este razonamiento lo que hace es legislar judicialmente asignando una cuota legítima al adoptivo igual a la del hijo legítimo. Empero, cuando surge el caso en que existe un hijo legítimo que concurra con uno adoptivo entonces habría que asignarle judicialmente otra cuota legítima, distinta y caprichosa.

La dificultad que surge al querer determinar cuál fué la intención legislativa consiste en el hecho de que al injertarse los artículos 132 y 133 en nuestro Código Civil trayéndolos del artículo 214 de Louisiana, nuestro Código resulta ''una *mezcla híbrida* de dos tendencias opuestas'' porque ''no se trató de armonizarles con los demás (artículos) procedentes del Código Español.''[5]

---

[5] Muñoz Morales, ob. cit., pág. 436.

En resumen, creo que el reconocimiento del hijo adoptivo como heredero forzoso debe ser hecho expresamente por nuestra Legislatura si así lo desea, y no a través de legislación judicial esporádica según se vaya presentando una situación distinta en la cual el hijo adoptivo concurra con uno o más de los herederos forzosos taxativamente especificados en nuestro Código.

Estoy conforme con aquella parte de la opinión del Juez Asociado Sr. Snyder que declara terceros a los codemandados en ella especificados.

*Debe confirmarse la sentencia apelada.*

OPINIÓN DEL JUEZ ASOCIADO SEÑOR SNYDER con la cual concurre el JUEZ ASOCIADO SEÑOR DE JESÚS.

En 1921 Manuel Sosa Oliva murió soltero y sin dejar ascendientes. Le sobrevivieron (a) Víctor Manuel Sosa y Manuel Isidro Sosa, sus hijos adoptivos y aquí demandantes

y apelantes; y (*b*) Juan Isidro Sosa Escobar y Celestina Sosa Vizcarrondo, quienes son sus hijos naturales reconocidos y se encuentran entre los aquí demandados y apelados.

Manuel Sosa otorgó testamento abierto un mes antes de su muerte. En él designó a Juan I. Sosa Escobar, como albacea y a sus dos hijos naturales reconocidos como sus únicos y universales herederos en el remanente de su herencia después de cumplirse todas las otras disposiciones de su testamento. El testamento también incluía:

(1) Un legado a Carmen Escobar, madre de sus dos hijos naturales reconocidos, consistente en una tercera parte de una extensa finca rústica conocida por "Josefina" y también una tercera parte del remanente de sus bienes de cualesquiera clase que éstos fueren; dicho legado para tener efecto durante la vida de ella y a su muerte para pasar a Víctor Manuel Sosa, Manuel Isidro Sosa, Carmen María Sosa Millán y Francisca Sosa Millán.

(2) Un legado de $10,000 para cada uno de los siguientes: Víctor Manuel Sosa, Manuel Isidro Sosa, Carmen María Sosa Millán y Francisca Sosa Millán. El testamento disponía que los intereses de estos legados fueran pagados a los legatarios mientras ellos fueran menores de edad, pero que Juan I. Sosa Escobar y Carmen Escobar serían los "administradores" de estos legados.[1]

(3) Otros legados oscilando entre las cantidades de $1,000 y $5,000 cada uno a María Sosa, Josefa Sosa, Cristóbal Antonio Fernández Sosa y Manuel Fernández Sosa, por lo cual todos son aquí demandados y apelados.

En noviembre 5, 1921 Juan I. Sosa Escobar, el albacea, y Celestina Sosa Vizcarrondo—los dos hijos naturales reconocidos del testador—y su madre—Carmen Escobar, quien como hemos visto era legataria en una cantidad sustancial— otorgaron una escritura de partición de la herencia. Esta

---

[1] Véase *Sosa* v. *Sosa*, 58 D.P.R. 470, 471, para una transcripción literal de los términos de este legado.

escritura enumeraba los bienes muebles e inmuebles de la herencia con un valor de $171,893.06, con deudas ascendentes a $24,565.68. Después de proveerse el pago de las deudas y legados por Juan I. Sosa Escobar en su calidad de albacea, la escritura dividió la herencia entre dichos tres individuos en cierta forma que no es necesario detallar aquí. Bastará decir que por razones que más adelante se expondrán los demandantes y apelantes atacan la escritura de partición como nula, y en su consecuencia incluyen como demandadas en este caso a las tres personas que la otorgaron.

En lo que respecta a los otros demandados, algunos han sido incluídos en este caso porque ciertas deudas les fueron pagadas a ellos o ciertos créditos fueron cobrados de ellos por el albacea;(²) otros demandados—Antonio R. Matos, The Federal Land Bank of Baltimore y The Land Bank Commissioner—lo son porque en virtud de una serie de transacciones ellos son dueños o acreedores hipotecarios de bienes inmuebles originalmente divididos en la escritura de partición. Se incluye como demandada a la Loíza Sugar Co., no sólo porque se alega que el albacea le pagó indebidamente un crédito hipotecario, si que también porque en la herencia estaban incluídas ciertas acciones de dicha corporación, alegando los demandantes que se distribuyeron indebidamente mediante la escritura de partición.

Los otros demandados—María Sosa, Josefa Sosa, Cristóbal Fernández Sosa, Antonio Fernández Sosa, Manuel Fernández Sosa, Carmen María Sosa y Francisca Sosa—fueron

---

(²)Una de las deudas de la herencia consistía de un préstamo garantizado por una hipoteca por $12,833.27 a la Loíza Sugar Co. y que debido a ello es una de las demandadas en este caso. Dos activos de la herencia, y los cuales fueron cobrados por el albacea de acuerdo con lo provisto en la escritura de partición, consistían de préstamos garantizados con hipoteca valorados en $8,000 y $1,000 de Marcial Suárez y Ceferino Osorio, respectivamente, quienes son aquí también demandados, bajo la teoría de que tales pagos fueron indebidamente hechos. No detallamos los hechos con respecto a estas partidas por razones que se expondrán más adelante.

incluídos como legatarios a quienes se les pagó en exceso, en virtud del alegado derecho de los demandantes apelantes a ciertas porciones de la legítima.

La quinta demanda enmendada fué radicada en 1942 por Víctor Manuel Sosa Millán y Manuel Isidro Sosa Millán, quienes fueron legalmente adoptados por el testador en 1919 y 1920, respectivamente. En ella se pide que la institución de herederos en el testamento sea declarada nula por razón de la preterición de los demandantes, hijos adoptivos del testador; que los pagos hechos, como arriba se indica, por algunos de los demandados al albacea sean declarados nulos, y que se les ordene pagarlos nuevamente; que se ordene a la Loíza Sugar Co. a transferir a la Sucesión de Manuel Sosa Oliva las acciones distribuídas en la escritura de partición; que se cancelen las hipotecas que hoy gravan los bienes inmuebles que pertenecían al testador al tiempo de su muerte; que los legados sean declarados nulos por ser los mismos excesivos; y que la partición de la herencia sea declarada nula y sin valor alguno.

Después de un juicio sobre los méritos, la corte de distrito dictó sentencia a favor de los demandados. El caso está ante nos en apelación contra esa sentencia.

## I

■ Al iniciar el estudio del presente caso nos confrontamos con el problema de determinar si Víctor Manuel Sosa y Manuel I. Sosa, demandantes y apelantes, e hijos adoptivos del testador, tienen algún derecho hereditario como herederos forzosos, en virtud del hecho de que el testador fué también sobrevivido por sus dos hijos naturales reconocidos. La corte de distrito decidió que la mera existencia de otros herederos forzosos enumerados por el artículo 736([3]) del Código Civil impide que los hijos adoptivos hereden en forma

---

([3]) Este artículo, que más tarde será expuesto en detalle, enumera a los hijos naturales reconocidos como herederos forzosos.

alguna como herederos forzosos. La corte inferior llegó a esta conclusión a base de *Ex parte Ortiz,* 42 D.P.R. 350. Pero ni la decisión ni el lenguaje usado en aquel caso tienen el alcance atribuídoles por la corte de distrito. Ciertamente al decidir en el caso de *Ortiz* que a pesar de la existencia del viudo—quien por virtud del artículo 736 de nuestro Código Civil es un heredero forzoso—los hijos adoptivos eran los únicos y universales herederos del causante, sin perjuicio de la cuota usufructuaria perteneciente al viudo, esta corte específicamente decidió en el caso de *Ortiz* que la existencia de otros herederos forzosos no excluía a los hijos adoptivos de su *status* como tales; sólo resolvimos que al determinar los derechos de los hijos adoptivos como herederos forzosos, los derechos de los herederos forzosos específicamente enumerados en el artículo 736 no pueden ser perjudicados.

Así ha interpretado esta corte el caso de *Ortiz* en *Bardeguez* v. *Bardeguez,* 48 D.P.R. 713. En aquel caso dijimos a las páginas 718, 719: "La opinión emitida por esta corte en *Ex parte Ortiz y Lluberas,* 42 D.P.R. 350, reconoce a los hijos adoptivos derechos hereditarios que le dan el carácter de herederos forzosos. . . En su opinión este tribunal estudia la legislación vigente en Puerto Rico sobre adopción, llegando a la conclusión de que el hijo adoptivo tiene la condición de hijo legítimo del adoptante, debiendo considerarse como un heredero forzoso, sujeto a las restricciones impuestas por la ley".

Y la única limitación impuesta por la ley en lo que respecta a derechos hereditarios es la que se encuentra en el artículo 132 del Código Civil de que "la adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado". Por otra parte, el artículo 133 da al hijo adoptivo los derechos y deberes de un hijo legítimo que bajo el artículo 118 incluye el derecho a la herencia legítima.

La posición de un hijo adoptivo como heredero no es nueva ni en el derecho español ni en los códigos de Europa. Así se le reconoció en el Derecho Romano, y siguiendo la tradición romana en el Derecho Español. La Ley 9, título 16, partida 4, disponía que un hijo adoptivo heredaría el total de la herencia del que lo adoptó si éste moría sin testamento y sin otros hijos; y que si él moría dejando hijos, el hijo adoptivo heredaría una porción igual a la de los otros. Más tarde la Ley V, título XXII, libro 4 del Fuero Real limitó el derecho hereditario del hijo adoptivo a una cuarta parte de la herencia en caso de sucesión intestada. Ni las leyes de Toro ni la Novísima Recopilación alteraron esto. Fué el artículo 177 del Código Civil Español el que rompió con esta tradición.(⁴) El artículo 177 disponía que el padre adoptante no adquiriría ningún derecho a heredar al hijo adoptivo y que el hijo adoptivo no heredaría al padre adoptante si éste lo excluía de su testamento, a menos que el padre adoptante, en la escritura de adopción, se comprometiera a designar al hijo adoptivo como su heredero. Sánchez Román en sus Comentarios al Código Civil, Vol. 5, pág. 1104, critica esta disposición del Código Español no sólo porque no armoniza con otras disposiciones del Código, si que también porque hace la sucesión el objeto de un contrato privado—"un pacto de sucesión futura"—al que han de prestar su consentimiento el adoptante y el adoptado, así como también otros de quienes se exige que consientan a la adopción o aprueben la misma. Mucius Scaevola, en sus Comentarios al Código Civil, Vol. 3, pág. 434, igualmente critica el artículo 177 del Código Civil Español. Scaevola atribuye la limitación de los derechos del hijo adoptivo en España al poco uso que en España se hace de dicha institución. Sin embargo, como él señala, nadie está obligado a adoptar

(⁴)Luis Muñoz Morales, Anotaciones al Código Civil de Puerto Rico, Revista Jurídica de la Universidad de Puerto Rico, Vol. X, número 4, pág. 411 a la pág. 427.

a un hijo; las consecuencias que de ella afluyen surgen de un acto voluntario en su naturaleza. Y también él señala que el hecho de que el hijo adoptivo tenga derechos heredi- tarios en la herencia de su adoptante es lo que realmente hace de ésta una institución benéfica. En verdad, podemos añadir en este respecto que sin herencia forzosa la adopción equivale a poco más que a un período limitado de aprendi- zaje o tutela.

Es por lo tanto altamente significativo que el artículo 177 del Código Civil Español no tenga equivalente en nuestro Código Civil y que los artículos 132 y 133 de nuestro Có- digo hayan sido injertados en nuestro Código tal como éste se trajo originalmente de España. Estos dos artícu- los fueron adoptados por nuestra Legislatura del artículo 214 del Código Civil de Louisiana con la sola diferencia que nuestro Código usa la palabra "familia" donde el de Louisiana usa la palabra "herencia". Consideramos que esta diferencia carece de significación, por lo menos a los propósitos de este caso. *Ex parte Ortiz,* supra. Lo impor- tante aquí es que el artículo 133 claramente confiere al hijo adoptivo "los derechos y deberes y la consideración de un hijo legítimo", lo que incluye bajo el artículo 118 el derecho a la herencia legítima. El llegar a otra decisión sería con- cluir que nuestra Legislatura actuó vanamente al aprobar el artículo 133. Finalmente, el resultado a que hemos llegado, es la interpretación dada al artículo 214 del Código de Louis- iana por las cortes de aquel estado. *Alexander* v. *Gray,* 181 So. 639 (La., 1938).[5]

---

[5]En aquel caso la corte usa el siguiente lenguaje (pág. 643):

" . . . De ser cierto, como sostiene el opositor, que un heredero adoptivo sólo puede percibir como tal en la sucesión del adoptante en ausencia de here- deros forzosos, entonces la enmienda de 1867 nada significa y fué una actuación inútil de la Legislatura. La adopción misma estaría desprovista de efecto legal como tal, salvo la posibilidad de crear una relación de aprendizaje. . . . La adopción, desde su más lejana historia, fué creada para, y verdaderamente 'confiere algún derecho sustancial' a la persona objeto de la misma. El artículo 214 del Código no viola este antiguo principio, sino que le añade fuerza al de-

Concluimos por tanto, al igual que en Louisiana, que de acuerdo con los artículos 132, 133 y 118 de nuestro Código Civil, los hijos adoptivos tienen el derecho a una legítima([6]) en la herencia de su adoptante siempre y cuando con ello no perjudiquen los derechos de los herederos forzosos enumerados por el Código.

---

clarar que el adoptado 'tendrá todos los derechos de un hijo legítimo en la herencia del [finado]', y etc., 'excepto como antes se provee'. Si el hijo adoptivo no participara en la herencia de su adoptante cuando hay herederos forzosos, entonces esta cláusula, que está supuesta a garantizar un derecho, expira por virtud de su propia impotencia. Si tal interpretación pudiera ser razonablemente dada a dicho artículo, ello sería sólo debido al disponiéndose allí contenido que,—

" 'Tal adopción no perjudicará los derechos de los herederos forzosos.'
"

"Parécenos razonablemente claro que dentro del significado e intención del artículo 214 del Código el término 'derechos de los herederos forzosos' sencillamente comprende y estaba destinado a abarcar únicamente la cuota en una sucesión de la cual el heredero no puede ser privado, excepto por causa. En otras palabras, la legítima. . . .''

*Alexander* v. *Gray* cita entonces a *Sucesión de Hosser*, 37 La. Ann. 839, 841, con aprobación, diciendo a la página 644 que aquel caso "clara y correctamente define los derechos y privilegios de una persona adoptada en este Estado, y al así hacerlo de igual manera ha determinado los derechos de los herederos forzosos sobre los cuales un heredero adoptivo no puede interponer reclamación''. El lenguaje citado en la página 644 lee en su parte pertinente como sigue:

" 'El acto de la adopción confirió en el hijo adoptivo todos los derechos constitutivos de la relación de padre e hijo. . . con la siguiente restricción, que la adopción no perjudicaría los derechos de los herederos forzosos, esto es: la legítima de tales herederos.
" '

" 'Los derechos conferidos fueron los de un hijo legítimo, esto es: derecho a heredar haya o no testamento' ''.

*Alexander* v. *Gray*, supra, concluye su discusión con respecto a los derechos relativos del hijo adoptivo y del hijo legítimo de la siguiente manera:

"¿Por qué no puede aplicarse la misma regla a los hijos (herederos forzosos) en lo que respecta a los derechos del hijo adoptivo? Dése a ellos su legítima y los requisitos del artículo 214 del Código Civil quedarán cumplidos. Entonces el hijo adoptivo participa de su cuota en la herencia sacada ésta de la parte de libre disposición y goza 'de todos los derechos de un hijo legítimo' en la herencia del adoptante y sin 'perjudicar los derechos de los herederos forzosos' según lo contempla la ley''.

Al mismo efecto, véase *Civil Effects of Adoption on the Descent of Property by Inheritance in Louisiana*, 13 Tulane L. Rev. 287, 289–90.

([6])"Legítima es la porción de bienes de que el testador no puede disponer por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos.'' Artículo 735 del Código Civil.

■■■ Aquí entra en juego el artículo 736 de nuestro Código. Este artículo en parte lee como sigue: "Son herederos forzosos:

"1. Los hijos y descendientes legítimos respecto de sus padres y ascendientes legítimos;
"2. *          *          *          *          *          *          *
"3. El viudo o viuda, los *hijos naturales legalmente reconocidos*. . ." (Bastardillas nuestras).

Tenemos por lo tanto que determinar de qué manera los derechos de los hijos naturales legalmente reconocidos—catalogados como herederos forzosos por el artículo 736—serán preservados sin perjuicio, como lo requiere el artículo 132, cuando el testador, como en el presente caso, deja también hijos adoptivos. La solución nos es dada por lo provisto en el artículo 769 al efecto de que "Cuando el testador no dejare descendientes ni ascendientes legítimos, los hijos naturales reconocidos tendrán derecho a la tercera parte de la herencia".

El argumento de que este artículo no es aplicable porque los hijos adoptivos han de ser considerados iguales a los descendientes legítimos ha sido rechazado en *Bardeguez* v. *Bardeguez,* supra, donde dijimos a las páginas 720, 721 y 722:

". . . El hijo adoptivo no lo es, y aunque de acuerdo con el código tiene los derechos de un hijo legítimo, sin perjuicio de los que correspondan a los herederos forzosos, los cuales subsistirán como si la adopción no se hubiese verificado, sin embargo, no creemos que esta disposición tenga el alcance de incluir al hijo adoptivo entre los herederos forzosos en línea recta. . .
"*          *          *          *          *          *          *
"Como se ve, *línea* en derecho civil significa una serie u orden de personas unidas en parentesco natural que tiene su origen en la comunión de sangre y cuya procedencia se determina por el número de generaciones. Cuando la procedencia es directa, los parientes lo son en línea recta, por vínculos de consanguinidad y no por ninguna otra relación.
"*          *          *          *          *          *          *

"El hijo adoptivo no puede, por lo tanto, considerarse como un heredero forzoso en línea recta por ser muy distintos los vínculos que lo unen a su padre por adopción. . . . ."

Por el mismo tenor la cantidad de la legítima de los hijos naturales reconocidos no está determinada por las disposiciones del artículo 767 del Código Civil,(⁷) puesto que ese artículo presupone la existencia de hijos legítimos e hijos naturales reconocidos. Y los hijos adoptivos como hemos visto, no son considerados como hijos de la·línea recta a estos fines.

Por lo tanto consideramos los hechos de este caso con el resultado final de que aunque los hijos naturales reconocidos tienen derecho a recibir una tercera parte de los bienes del testador, de acuerdo con el artículo 769, como su legítima, cualquier propiedad sobrante ha de estar sujeta a la legítima de los hijos adoptivos, puesto..que al así hacerse no se perjudican los derechos que corresponden a·los herederos forzosos de conformidad con el artículo 132.

## II

■ La siguiente contención de los apelantes es al efecto de que la corte de distrito erró al no declarar el testamento nulo bajo el artículo 742 por razón de la alegada omisión de los hijos adoptivos en el testamento. Este argumento se basa en el artículo 742 de nuestro Código Civil al efecto de que la "preterición de alguno o de todos los herederos forzosos en línea recta . . . . anulará la institución del heredero". La corte inferior sostuvo que aún si los hijos adoptivos son herederos forzosos—nosotros hemos decidido que

---

(⁷)Dicho artículo lee como sigue:

"Cuando el testador deje hijos o descendientes legítimos e hijos naturales legalmente reconocidos, tendrá cada uno de éstos derecho a la mitad de la cuota que corresponda a cada uno de los legítimos no mejorados siempre que quepa dentro del tercio de libre disposición, del cual habrá de sacarse, deduciendo antes los gastos de entierro y funeral.

"Los hijos legítimos podrán satisfacer la cuota que corresponda a los naturales en dinero o en otros bienes de la herencia·a justa regulación."

lo son sujetos a la restricción arriba expuesta—ellos no fueron preteridos en el testamento y que por lo tanto la acción que ellos debieron radicar es una para complementar sus participaciones y no una para pedir la nulidad de la institución de herederos.

Manresa en sus Comentarios al Código Civil Español, Vol. 6, pág. 350, comentando en torno al artículo 814, equivalente al artículo 742 de nuestro Código Civil, dice: *"Que la omisión sea completa.*—Esta condición se deduce del propio artículo 814, y resulta evidente al relacionar este artículo con el 815. El heredero forzoso a quien el testador deja algo por cualquier título en su testamento, no se halla propiamente omitido, pues se le nombra y se le reconoce participación en los bienes hereditarios. . . . Aquél se ocupa de la privación completa o total, tácita; éste, de la privación parcial. Los efectos deben ser y son, como veremos, completamente distintos."

El artículo 743 de nuestro Código es copiado del artículo 815 del Código Civil Español. Manresa, supra, dice a la página 358: "El espíritu del artículo 815 resulta evidente: cuando el heredero forzoso no ha sido olvidado por el testador, cuando ha tomado algo de los bienes hereditarios, sólo puede reclamar que se le complete su legítima." Y Scaevola, Comentarios al Código Civil, Vol. 14, dice a la pág. 360–1: "Consiste la preterición en el silencio del testador respecto al heredero forzoso, en no dejarle nada en el testamento, porque si algo le otorgara, se trataría del caso del art. 815, de complemento de legítima".

Puesto que los hijos adoptivos son legatarios en el testamento por la cantidad de $10,000 cada uno y son también dos de los dueños en nuda propiedad (*remainder-men*) en cuanto al legado de una tercera parte de cierta propiedad inmueble y en cuanto al remanente de los bienes legados en usufructo a Carmen Escobar, convenimos con la corte de distrito en que el artículo 742 no tiene ninguna aplicación

aquí porque los hijos adoptivos no fueron totalmente prete-
ridos en el testamento. Su remedio, si alguno tienen, pro-
cede por lo tanto bajo el artículo 743 para pedir que se les
complementen sus cuotas.([8])

Más aún, hay una razón adicional por la que el artículo
742 no puede aplicarse en este caso. Ese artículo se refiere
a "herederos forzosos en línea recta" lo que no incluye a
los hijos adoptivos. *Bardeguez* v. *Bardeguez, supra,* a la
página 720 sostiene que el artículo 742 "se refiere exclusi-
vamente a los herederos forzosos en línea recta", y aunque
un hijo adoptivo "tiene los derechos de un hijo legítimo, sin
perjuicio de los que correspondan a los herederos forzosos,"
ello no tiene "el alcance de incluir al hijo adoptivo entre los
herederos forzosos en línea recta que son los únicos que
pueden obtener la anulación de la institución de heredero en
la extensión que determina el artículo 742 del referido cuerpo
legal."

Esta corte entonces dice en el caso de *Bardeguez* que el
hijo adoptivo puede recurrir al artículo 741.([9]) Pero contra-
rio a aquel caso, el nuestro no es uno en que "la preterición
del demandante resulta manifiesta"([10]) En el caso de *Barde-
guez* nada le fué dejado a uno de los hijos adoptivos; aquí
ellos no han sido totalmente omitidos. El artículo 742, por
lo tanto, nunca entra en juego en este caso. Aunque eso
fuera posible no hay aquí ninguna razón para recurrir al
artículo 741 como se hizo en el caso de *Bardeguez* en lugar
del artículo 742. Más bien el artículo 743 se ajusta mejor
a los hechos del caso presente, toda vez que aquí hubo una
privación parcial y no total de la legítima y toda vez que

---

([8])El artículo 743 lee como sigue: "El heredero forzoso a quien el tes-
tador haya dejado por cualquier título menos de la legítima que le corresponda,
podrá pedir el complemento de la misma."

([9])El artículo 741 lee como sigue: "El testador no podrá privar a los
herederos de su legítima sino en los casos expresamente determinados por la Ley.

"Tampoco podrá imponer sobre ella gravamen, ni condición, ni sustitu-
ción de ninguna especie, salvo lo dispuesto en cuanto al usufructo del viudo."

([10])*Bardeguez* v. *Bardeguez, supra,* a la página 719.

el artículo 743 sólo exige que la parte promovente sea "un heredero forzoso" y no "un heredero en línea recta".

En *Ex parte Boerman,* 34 D.P.R. 126, se trataba de un testamento en que se dejaba un legado de $5,000 a un hijo natural reconocido. En la opinión se usa el siguiente lenguaje a las páginas 129, 130: "El testamento no podía subsistir en su integridad. En él se pretirió a un heredero forzoso y de acuerdo con el mandato expreso de la Ley—artículo 802 del Código Civil [ahora, artículo 742]—la institución de heredero que contenía quedó anulada". En vista de las razones aquí expuestas, consideramos prudente indicar que creemos que lo arriba dicho es erróneo.

■ Es conveniente manifestar en este momento que no es de ninguna manera fatal el que los demandantes y apelantes hayan seleccionado erróneamente el título de su acción y el artículo del Código aquí aplicable. Aun cuando la acción traída sea una de nulidad de disposiciones testamentarias bajo el artículo 742, el remedio encontrado en el artículo 743 puede ser aplicado siempre y cuando concurran todos los requisitos necesarios al mismo. Esto es lo que exactamente ocurrió en *Bardeguez* v. *Bardeguez* con la única diferencia que esta corte dictó sentencia en el caso de *Bardeguez* de acuerdo con el artículo 741 en vez del artículo 743 cuando descubrió que el remedio solicitado bajo el artículo 742 no procedía. Y es claro que en este caso se encuentran los tres elementos exigidos por el artículo 743: (*a*) algo se le ha dejado en el testamento al heredero; (*b*) el título con que se le dejó la cosa es inmaterial; (*c*) la demanda pide la cantidad necesaria para complementar la legítima. Scaevola, Comentarios al Código Civil, Vol. 14, pág. 369.

## III

■ Por virtud del tercer error asignado los apelantes sostienen que la corte inferior erró al declarar válida la partición, afirmando que ésta debió haber sido declarada nula por razón de la inexistencia de la misma.

Esta partición ha estado ante nosotros en dos ocasiones anteriores. Véanse *Sosa* v. *Registrador,* 34 D.P.R. 765, donde ordenamos su inscripción; y *Sosa* v. *Sosa,* 58 D.P.R. 470, donde otros dos legatarios por $10,000 cada uno como arriba se expone—pero no los aquí demandantes apelantes quienes también recibieron $10,000 cada uno como legatarios en la misma cláusula del testamento—radicaron pleitos como *legatarios* contra los herederos del testador atacando la partición como nula. Sostuvimos allí que (pág. 476) "los legatarios tampoco tienen derecho a intervenir en la partición de los bienes hereditarios, ya que como reiteradamente ha dicho este tribunal, la partición no es otra cosa que una enajenación entre los herederos de la parte indeterminada que tienen en la herencia, por la parte determinada y específica que reciben a cambio de aquélla."

El caso de *Sosa* también sostuvo que los legatarios en aquella cláusula del testamento no podían recobrar en el pleito contra los herederos de Sosa porque el testador había ordenado que Juan I. Sosa fuera uno de los administradores de los legados en cuestión, y bajo la escritura de partición otorgada por Juan I. Sosa y otros, Juan I. Sosa había recibido del activo de la herencia el dinero para el pago de dichos legados a los legatarios. Al dictar sentencia a favor de los demandados esta Corte en su consecuencia dijo a la página 478: "Bastaba que el pago se hiciese a la persona que el testador designó para recibirlo y a esa persona se hizo. Si Sosa, faltando a la obligación legal y moral que tenía para con sus hijos y a la confianza en él depositada por su padre, dilapidó el fondo que para su administración le fué entregado, cúlpese a él . . . pero no se pretenda imponer esa responsabilidad a la demandada, que religiosamente pagó a quien según el testamento estaba obligada a pagar".

Sin embargo, en el presente caso se ataca la partición sobre una teoría distinta. Los demandantes apelantes, quie-

nes no eran parte en el pleito radicado en el caso mencionado por sus dos colegatarios, no demandan aquí como legatarios pidiendo el pago de sus legados. Al contrario, ellos demandan una declaración de nulidad de la escritura de partición por inexistente, por no habérseles incluído en la misma como herederos forzosos.

Como dice Manresa en sus Comentarios al Código Civil, Vol. 7, pág. 611: "Desde luego la división de la herencia viene a ser un accesorio de la institución de herederos; de modo que en todos los casos en que esta institución se anule por cualquier causa, nula será la división". Pero aquí también la dificultad es que la alegada invalidez de la partición depende de nuestra primera conclusión de que la nulidad de la institución de herederos procede aquí; y como se ha visto, no ha habido una absoluta preterición de los herederos en el testamento y además los hijos adoptivos no son "herederos forzosos en línea recta", siendo ambos requisitos indispensables para una declaración de nulidad de institución de herederos.

Los demandantes apelantes sin embargo sostienen que la partición es nula solamente porque el artículo 1026 del Código Civil provee que "las particiones pueden rescindirse por las mismas causas que las obligaciones". Sostienen que como ellos no fueron parte en la escritura de partición, uno de los requisitos del artículo 1213 del Código—el consentimiento de las partes contratantes—no existe.

Comentando sobre este punto Manresa, en sus Comentarios al Código Civil, Vol. 7, pág. 709, dice: " . . . La palabra rescisión, en el artículo 1073, [que corresponde al artículo 1026 de nuestro Código Civil] hay que entenderla en un amplio sentido, como sinónima de quedar sin efecto la partición.

"Siguiendo, pues, las reglas establecidas para los contratos, debemos deducir que la partición no existe cuando en ella falta consentimiento, objeto o causa. . . ".

Toda vez que "la partición representa un contrato entre los coherederos",([11]) que bajo el artículo 1026 puede ser rescindido por las mismas causas que las obligaciones, parece de primera impresión que los herederos forzosos que no participaron en ella y que por lo tanto no consintieron a la misma podrían obtener una declaración de su inexistencia. Sin embargo, esta solución queda prohibida por mandato expreso del Código. El artículo 1033 lee como sigue:

"La partición hecha con preterición de alguno de los herederos no se rescindirá, a no ser que se pruebe que hubo mala fe o dolo por parte de los otros interesados, pero éstos tendrán la obligación de pagar al preterido la parte que proporcionalmente le corresponda."

No habiendo dolo o mala fe de parte de los otros herederos, lo cual no se demostró aquí, tal partición omitiendo a algunos de los herederos subsistirá y la acción para declarar su inexistencia no procede. Preterición tal cual es usada en el artículo 1033 significa el no participar uno o más herederos en la partición. Véase Enciclopedia Jurídica Española, Vol. 24, pág. 383. Scaevola, supra, Vol. 18, pág. 466, critica esta doctrina, creemos que con razón, porque el artículo 1033 debió haber sido redactado para incluir casos por nulidad y no por rescisión como provee el artículo 1026, puesto que, como ya hemos anotado, un heredero que nunca participó en la partición nunca consintió y por tanto nunca participó en el contrato contenido en la partición.

Sin embargo, no podemos eludir las disposiciones del artículo 1033 y por lo tanto nos vemos constreñidos a decir que la partición aquí envuelta es válida; y que los demandantes apelantes tienen solamente una acción personal contra sus coherederos por el remanente de su legítima.

■■ Añadimos también que aún en el supuesto de que la partición fuera nula, los demandados Matos, The Federal Land Bank y el Land Bank Commissioner son, bajo las cir-

---

([11])Manresa, supra, Vol. 7, pág. 709. Al mismo efecto Scaevola, supra, Vol. 18, pág. 424.

cunstancias de este caso, terceros en lo que respecta a los bienes inmuebles que originalmente eran parte de la herencia y que son ahora poseídos por ellos o sobre los cuales ellos tienen gravámenes hipotecarios. A pesar de que, en cumplimiento de una orden judicial, anotaciones marginales de las adopciones de los demandantes apelantes por el testador fueron inscritas en el correspondiente sitio en el Registro Civil, tal anotación nunca fué hecha en el Registro de la Propiedad.

La Enciclopedia Jurídica Española, Vol. 24, pág. 384, dice:

"¿Los efectos de la rescisión trascienden al tercero igualmente que a los coherederos? Ha prevalecido la afirmativa conforme a la que la rescisión anula cuantas enajenaciones y constitución de hipotecas o de otros derechos reales hayan sido convenidos por cualquiera de los herederos; pero entre nosotros no nos cansaremos de repetir que cuando se habla de derechos que afecten a la propiedad inmueble, ha de tenerse en cuenta la Ley Hipotecaria, y a tenor de los artículos 36, 37 y 38 de la misma, dada la rescisión de una partición, el tercero que tenga inscripto su título en el Registro gozará de completa seguridad como la causa de rescisión no conste del mismo Registro . . . Claro que con esa tutela se amparan muchas irregularidades que conducen a la ruina de menores, incapacitados y demás personas especialmente protegidas por el Derecho, pues la acción personal que queda contra el coheredero enajenador o hipotecante muy rara vez puede indemnizarles."

Por tanto concluimos que, de conformidad con los artículos 34 y 36 de la Ley Hipotecaria, la ausencia de la anotación de las alegadas causas de rescisión en las inscripciones de estos bienes inmuebles en el Registro de la Propiedad protegería a aquellos que compraron o hipotecaron sin conocimiento efectivo de las mismas. No es suficiente la anotación de la adopción hecha en el Registro Civil; bajo las circunstancias de este caso era necesaria la anotación de la adopción en el Registro de la Propiedad, para que perjudique a los compradores o acreedores hipotecarios de los bienes inmuebles afectados por la misma. Y esto no se hizo.

En lo que respecta a la demandada Loíza Sugar Co., y después de concluir que la escritura de partición no es nula como tal, es obvio que los demandantes apelantes carecen de derecho para obligar a la corporación a eliminar las transferencias de las acciones hechas de buena fe en sus libros de acuerdo con la escritura de partición. De igual manera todas las transacciones con diversos deudores y acreedores de la herencia efectuadas por el albacea en cumplimiento de la escritura de partición, no pueden impugnarse aquí.

## IV

Llegamos ahora a la única cuestión pendiente—considerando ésta como una acción personal contra sus coherederos para pedir el complemento de sus legítimas, ¿recibieron los hijos adoptivos, los aquí demandantes apelantes, menos de su cuota legítima como herederos forzosos? Como hemos visto, bajo las circunstancias de este caso, las cuotas de los herederos forzosos, específicamente enumerados por la ley como tales, tienen que ser sacadas primeramente de la herencia antes de que podamos entrar a considerar los derechos de los hijos adoptivos. En cuanto a los herederos específicamente enumerados—hijos naturales reconocidos—aquí envueltos, el artículo 769 del Código dispone que "cuando el testador no dejare descendientes ni ascendientes legítimos, los hijos naturales reconocidos tendrán derecho a la tercera parte de la herencia."

No podemos estar de acuerdo con Muñoz Morales[12] en cuanto a que bajo las circunstancias presentes—habiendo sido sobrevivido el testador por sus hijos adoptivos y naturales reconocidos—el artículo 767[13] del Código debe prevalecer. No podemos concluir que el artículo 767 es aplicable toda vez que aquí hemos manifestado que los hijos adoptivos, aun-

---

[12] Muñoz Morales, supra, a la pág. 439.
[13] Dicho artículo se cita íntegramente en el escolio 7.

que herederos forzosos, no son descendientes legítimos, el último término refiriéndose sólo a vínculos de sangre.

Pero cuando encaramos el problema de determinar la legítima de los hijos adoptivos no encontramos disposición específica en el Código. Esto es el resultado de la omisión de la Legislatura de proveer al efecto cuando adoptó los artículos 132 y 133 del Código de Louisiana. Sin embargo, y en vista del artículo 7 del Código Civil, consideramos conveniente recurrir al artículo 737 para encontrar una solución a este problema. Este artículo provee en parte que "constituyen la legítima de los hijos y descendientes legítimos las dos terceras partes del haber hereditario del padre y de la madre."

Aunque el Código no fija una legítima específica para los hijos adoptivos, ellos tienen derecho a una legítima siempre y cuando que por la misma no se perjudiquen las legítimas de herederos específicamente enumerados en el Código Civil. Y si se tiene en mente que el artículo 737 se aplica junto con el artículo 769, bajo el cual una tercera parte del caudal hereditario se designa previamente como legítima de los hijos naturales reconocidos antes de serle asignada a los hijos adoptivos dos terceras partes de la herencia, a tenor con el artículo 737, es justo decir que estos artículos así interpretados han sido armonizados y aplicados de acuerdo con la intención de la Legislatura.[14]

Consideremos ahora el artículo 746 del Código Civil que nos da la norma para la determinación cuantitativa de las legítimas. Ese artículo lee como sigue:

"Para fijar la legítima se atenderá al valor de los bienes que quedaren a la muerte del testador con deducción de las deudas y cargas, sin comprender entre ellas las impuestas en el testamento.

[14] No nos ayudan en esta materia los Comentaristas Españoles ya que los artículos 132 y 133 de los cuales surge este problema no se encuentran, como hemos visto, en el Código Español.

"Al valor líquido que los bienes hereditarios tuvieren, se agregará el que tenían todas las donaciones colacionables del mismo testador en el tiempo en que las hubiera hecho".

No hubo donaciones colacionables para ser traídas a la herencia en el presente caso. Y las partes están contestes que el activo y pasivo de la herencia ascendía a $171,893.06 y a $24,565.68, respectivamente. Por lo tanto, con el fin de determinar las legítimas, se admite que el valor de la herencia es de $147,327.38. Una tercera parte de esto, bajo el artículo 769, constituye la legítima de los hijos naturales reconocidos, esto es, $49,109.12 ⅔, para ser dividido entre ellos, o sea $24,554.56 ⅓ para cada uno. Puesto que cada uno ya recibió $30,109.26, cada uno recibió $5,554.69 ⅔ en exceso de su cuota legítima. Por el contrario, la cuota de los hijos adoptivos debió haber sido, bajo el artículo 737, dos terceras partes de la herencia después de deducir la legítima de los hijos naturales reconocidos, esto es, dos terceras partes de $147,327.38, o sea $98,218.25 ⅓, ó $49,109.12 ⅔ cada uno. Toda vez que los hijos adoptivos no recibieron el total de dicha legítima, tienen ellos el derecho a reclamar el balance de la misma de sus coherederos y de los legatarios. Puesto que el total de la herencia debió haberse distribuído como antes se ha dicho, no quedaba dinero disponible para el pago de legados. Los demandantes tienen, por lo tanto, derecho a recobrar las cantidades pagadas a los legatarios en perjuicio de su legítima.

Procede una advertencia final. En *Sosa* v. *Sosa*, 58 D. P.R. 470, sostuvimos, como ya hemos indicado, que el pago a Juan I. Sosa de todo o parte de los legados de $10,000 provistos en el testamento para cada uno de los dos demandantes en aquel caso, tiene que ser considerado como hecho a ellos, en virtud del nombramiento hecho en el testamento a favor de Juan I. Sosa, como "administrador" de dichos legados. Pero aquella decisión estaba basada en el *status* de los dos demandantes en aquel caso, quienes allí demandaban

como legatarios. En el presente caso el status de los demandantes apelantes es diferente. Hemos sostenido aquí que ya que el testador legó a los demandantes apelantes $10,000 a cada uno en la misma cláusula del testamento envuelta en *Sosa* v. *Sosa,* supra, los demandantes apelantes no fueron preteridos en el testamento, y en consecuencia no tienen derecho a anular la institución de herederos contenida en el mismo. Pero si, como hemos sostenido, cada uno de los demandantes apelantes tiene derecho a dichos $10,000, no como meros legatarios sino como parte de su legítima, el artículo 741 del Código Civil([15]) impide cualquier intento de imponer condición alguna en el pago de los mismos, incluyendo la condición aquí envuelta de que el pago al "administrador" de los mismos, nombrado en el testamento, será suficiente. La propiedad legada a un heredero forzoso en el testamento tiene absolutamente que ir al mismo, si es que ha de considerarse como parte de la legítima del heredero forzoso; las condiciones, si algunas, impuestas por el testador a la misma desaparecerán. En su consecuencia no bastará en este caso demostrar que los $20,000 fueron pagados a Juan I. Sosa en satisfacción de los legados de los demandantes apelantes. Para que esa suma o cualquier parte de la misma sea consi· derada como una parte de la legítima de los demandantes apelantes, habrá que demostrar que ellos, o alguien con su debida representación legal durante su minoridad, recibieron el pago de la misma.

En vista de los resultados a que hemos llegado en cuanto a las cuestiones de derecho y de la falta de conclusiones de hecho por la corte de distrito sobre estas materias, creemos que el estado actual del récord no permite a esta corte dictar la sentencia en este caso. Entre otras cosas, nos encontramos, por ejemplo, con la contención de que por virtud de la compra hecha por Juan I. Sosa de ciertos bienes inmuebles y del alegado traspaso de los mismos a los demandan-

---

([15]) El artículo 741 se cita íntegramente en el escolio 9.

tes apelantes, éstos han de hecho recibido el pago de dichos legados de $10,000 cada uno.([16]).   Somos de opinión que esta corte debería (a) confirmar la sentencia apelada en cuanto a los demandados Matos, Federal Land Bank of Baltimore, The Land Bank Commissioner, Loíza Sugar Co., Marcial Suárez·y Suárez y Ceferino Osorio; (b) revocar la sentencia en cuanto a los otros demandados; y (c) devolver el caso a la corte de distrito para ulteriores procedimiéntos no inconsistentes con esta opinión.

([16])Notamos también que Carmen Escobar, la madre de los dos hijos naturales reconocidos, legataria en una cantidad sustancial y una de las partes en la escritura de partición, murió con anterioridad a la radicación de la quinta demanda enmendada, y que su sucesor no ha sido unido como demandado, aunque en las anteriores demandas Carmen Escobar era una de los demandados. Pero, como somos de opinión que los demandantes apelantes sólo pueden recobrar a lo sumo por acción personal contra sus coherederos y los legatarios para reclamar cualquier cantidad necesaria al complemento de las cuotas de los demandantes apelantes como coherederos, las personas que participaron en la escritura de partición y los diversos herederos forzosos y legatarios no son partes necesarias. Cada uno de los coherederos y legatarios es una parte apropiada, pero no necesaria, a tenor con la conclusión a que hemos llegado en este caso.