Ex parte Rosaura, Blanca Alicia, Esther María, Lydia, María, Alvilda, Aida, Ada Zoraida y Alpha Antonia, Née Ortiz, bajo la patria potestad de su madre Doña Emilia Ortiz Vargas, peticionarias apeladas, y Arturo Lluberas Rodríguez, opositor apelante.

No. 5457.—*Sometido:* Noviembre 26, 1930. *Resuelto:* Mayo 29, 1931.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Rosaura Ortiz y sus siete hermanas, debidamente representadas por su madre, radicaron una petición ante la Corte de Distrito de Ponce solicitando se les declarara únicas y universales herederas de Rosa Lluberas Rodríguez, sin perjuicio de la cuota usufructuaria perteneciente al viudo Francisco Carreras.

Las peticionarias archivaron su solicitud fundándose en que ellas eran hijas adoptivas de dicha Rosa Lluberas Rodríguez y en que ésta al tiempo de su fallecimiento no dejó descendientes o ascendientes de clase alguna.

La petición fué presentada el 18 de septiembre de 1930, y ese mismo día Arturo Lluberas Rodríguez compareció y radicó un escrito oponiéndose a las reclamaciones de las peticionarias, y alegando que él era único y universal heredero de Rosa Lluberas Rodríguez de conformidad con un testamento ológrafo otorgado por ella el 22 de mayo de 1925.

La adopción y el testamento ológrafo fueron proba-

dos debidamente en el juicio y no surge punto de hecho alguno. La única cuestión presentada para su decisión a la corte de distrito y a nosotros es si los hijos adoptivos tienen derecho a heredar como herederos forzosos o si son en realidad tales herederos forzosos. Es prácticamente la misma proposición resolver que en ausencia de los herederos forzosos previamente señalados por la ley los hijos adoptivos tienen derecho a heredar aunque el adoptante otorgue testamento en que constituya a otra persona como su única heredera. La Corte de Distrito de Ponce resolvió a favor de los hijos adoptivos. La corte y las partes han discutido principalmente el alcance de los artículos 203 y 202 del Código Civil en el orden citado, que leen así:

"Artículo 203.—El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior."

"Artículo 202.—La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado."

Después de expresar quiénes son generalmente herederos forzosos bajo el código, la corte citó del artículo 186 del Código Civil, que provee:

"Los hijos legítimos tienen derecho: 1. A llevar los apellidos del padre y de la madre. 2. A recibir alimentos. 3. A la herencia legítima."

La corte entonces dijo:

"Al disponer el artículo 203 del Código Civil Revisado que el hijo adoptivo tendrá en la familia del adoptante, los mismos derechos que un hijo legítimo, es indudable que tiene derecho a heredar lo mismo que heredaría un hijo legítimo."

La corte entonces resolvió que esta conclusión estaba fortificada por el artículo 202 y que la adopción en ningún caso debía afectar los derechos de los herederos forzosos.

Se llamó la atención hacia las disposiciones del antiguo Código Civil español que provee en su artículo 177 lo que sigue:

"El adoptante no adquiere derecho alguno a heredar al adoptado. El adoptado tampoco lo adquiere a heredar, fuera de testamento, al adoptante a menos que en la escritura de adopción se haya éste obligado a instituirle heredero. Esta obligación no surtirá efecto alguno cuando el adoptado muera antes que el adoptante. El adoptado conserva los derechos que le corresponden en su familia natural, a excepción de los relativos a la patria potestad."

La corte resolvió que era muy significativo que dicho artículo 177 no fuera reproducido en el Código Civil puertorriqueño y dedujo que fué la intención de la Legislatura al promulgar el estatuto, considerar para los efectos hereditarios a los hijos adoptivos como verdaderos hijos legítimos del adoptante, sin perjudicar desde luego los derechos de los herederos forzosos. Todo esto debe considerarse en conexión con las limitaciones a la adopción.

Creemos que el razonamiento de la corte inferior fué completo, pero nos entregaremos a algunas consideraciones adicionales en respuesta quizá al apelante. Si bien este último presentó varios señalamientos de error, ello se hizo sólo para atacar la proposición expuesta por la corte.

Podría decirse que el argumento principal del apelante fué que como el Código Civil declaraba quiénes son herederos forzosos y no incluía a los hijos adoptivos, tal exclusión militaba contra la conclusión de que los hijos adoptivos podrían en cualquier caso convertirse en herederos forzosos. Pudieran o no los hijos adoptivos ser designados específicamente como herederos forzosos, convenimos con la corte sentenciadora en que a ellos se les dan los mismos derechos que a los hijos legítimos. En otras palabras, no importaría que a ellos se les llamara herederos forzosos o no. Se ha dado mucho énfasis al hecho de que, de conformidad con el artículo 203, un hijo adoptivo sólo tiene derechos en la familia del adoptante. En cualquier concepto de sucesión universal, la palabra "familia" significa infinidad de cosas. Probablemente comprenda la idea de tal sucesión universal. El artículo 202 aclara este punto al decir que los derechos

de los hijos adoptivos no perjudicarán en ningún caso los derechos que correspondan a los herederos forzosos. Como el legislador al referirse a herederos forzosos en el artículo 203 trata de los derechos hereditarios, sería una conclusión necesaria que para los hijos adoptivos existen derechos hereditarios, a menos que haya tales herederos forzosos. El derecho de heredar surge solamente a la muerte del causante. En ausencia de otros herederos legítimos, los hijos adoptivos heredan como hijos legítimos.

■ El apelante llama nuestra atención al hecho de que con anterioridad a la aprobación del artículo 177 del Código Civil español, cuando los hijos adoptivos tenían ciertos derechos hereditarios, estos derechos no prevalecían ante un testamento otorgado por el adoptante, y se hace una cita de Manresa a ese efecto. 2 Manresa, Comentarios al Código Civil, 76. No hemos comprobado la ley existente con anterioridad a la aprobación del Código Civil español, pero estamos convencidos de que ella no puede intervenir con la intención de la Legislatura, según expresan los artículos 202 y 203 tomados aisladamente.

El apelante admite que el artículo 203 es nuevo en nuestro sistema. Ese artículo excluye la idea de que la Legislatura sólo tuvo en mente el sostenimiento, la educación y algo similar.

■■ Si bien como hemos dicho creemos que el razonamiento de la corte inferior resuelve el caso, haremos otras consideraciones. Los artículos 202 y 203 no están solos. Los artículos 200 y 201 proveen lo que sigue:

"Artículo 200.—Cualquiera persona puede adoptar a otra por hijo suyo.

"Artículo 201.—El adoptante debe hallarse en el pleno uso de sus derechos civiles y haber cumplido la edad de treinta y siete años y además deberá tener por lo menos diez y ocho años más que el adoptado."

Ninguna de las partes aparentemente lo ha discutido, pero ¿cuál es la fuerza del artículo 200 tomado por sí solo? El

uso de la palabra hijo en su significado general, ordinario y usual quiere decir que tal hijo tendrá para con el adoptante las mismas relaciones que un hijo ordinariamente tiene con sus padres. Especialmente en una controversia civil, la palabra adopción lleva consigo que la persona adoptada tiene todos los derechos de un hijo corriente. En tiempos romanos un hijo adoptivo entraba plenamente bajo la patria potestad de la persona que lo adoptaba.

En *Vidal* v. *Commagere,* 13 La. Ann. 516, que es un caso muy citado, estaba envuelta una ley de la Legislatura que autorizaba la adopción de un huérfano. En Louisiana por el código de 1808 se abolió el derecho de adopción (*In re Upton,* 16 La. Ann. 175) pero fué restaurado el 1865. Por tanto, en la época en que se decidió el caso de *Vidal* v. *Commagere, supra,* no existía ley alguna sobre la materia de adopción en el estado de Louisiana. Por consiguiente, la corte tenía que interpretar lo que quiso decir la Legislatura al usar la palabra adopción. La corte dijo: ''Si tomamos la significación más conocida y usual de la palabra adoptar, hallaremos que ella significa 'llevar a un extraño a la propia familia como hijo y heredero; tomar a uno que no es un hijo y tratarlo como tal, autorizándole a gozar de los privilegios y derechos de un hijo.' Webster's Dic. verbo *adopt.''* La corte demostró que así había sido entendida anteriormente la adopción en Louisiana y que ''no debe suponerse que el legislador ignorara este estado de cosas o que usara la palabra en un sentido más limitado del que de antiguo fuera conocido por nuestras leyes; y es regla de hermenéutica que las leyes que tratan de la misma materia pueden ser consideradas, ora estén en vigor o derogadas.''

En varios estados de la Unión se aprobaron estatutos sobre adopción. Las leyes anteriores se referían a la distribución de la herencia o a otros extremos que daban ciertos derechos a los ''vástagos'' (*issue*) o ''descendientes'' (*descendants*) de un finado. Las cortes generalmente han resuelto que los hijos adoptivos deben ser por tanto consi-

derados como vástagos o descendientes, aunque es claro que originalmente ninguna de estas palabras podía significar otra cosa que la prole. *In re Newman,* 75 Cal. 213; *Batchelder* v. *Walworth,* 37 L.R.A. (N.S.) 849, casos citados e historia; *Riley* v. *Day,* 44 L.R.A. (N.S.) 296; *Ross* v. *Ross,* 129 Mass. 243; *In re Hebb's Estate,* 134 Wash. 424; 1 R.C.L. 619; 11 C.J. 752; 1 C.J. 1398, pár. 128. Todas estas autoridades tratan de la proposición principal. De igual modo, en Puerto Rico, donde el estatuto otorga el derecho de adopción, no es gran esfuerzo decir que la Legislatura quiso significar que la persona así adoptada cayera dentro del significado de heredero forzoso. Sujeto a restricción, se confiere al adoptivo el *status* de hijo legítimo.

Conforme hemos dicho, el artículo 200 por sí mismo otorga derechos, y los artículos posteriores solamente fijan ciertas limitaciones sobre tales derechos, que, bajo el artículo 186 incluyen el derecho a heredar. Consideramos que un estatuto sobre adopción debe ser interpretado liberalmente en favor del hijo adoptivo, al igual que se ha hecho en otras jurisdicciones. *Bilderback* v. *Clark,* 9 A.L.R. 1622; *In re Hebb's Estate,* 134 Wash. 424, 427; 1 R.C.L. 595.

*La sentencia apelada debe ser confirmada.*