Víctor Manuel y Manuel Isidro Sosa y Millán, demandantes y apelantes, *v.* Juan Isidro Sosa Escobar, et al., demandados y apelados.

Núm. 8973.—*Sometido:* Julio 2, 1946. *Resuelto:* Julio 26, 1946.

*Ricardo H. Blondet* y *Arturo Ortiz Toro,* abogados de los apelantes; *Heriberto Torres Solá,* abogado de la apelada Celestina Sosa Vizcarrondo; *Heriberto Torres Solá* y *Gabriel de la Haba,* abogados del apelado Antonio R. Matos; *Frank Martínez, M. A. García del Rosario* y *Sebastián García Díaz,* abogados de los apelados Federal Land Bank of Baltimore y The Land Bank Commissioner; *Sifre, Franceschi & Sifre,* abogados de la apelada Loíza Sugar Company; *C. Coll y Cuchí,* abogado del apelado Marcial Suárez.

El Juez Asociado Señor Córdova emitió la opinión del tribunal.

Vuelven a nuestro regazo los hijos naturales y adoptivos de Manuel Sosa. Su caso nos ha sido devuelto por la Corte de Circuito para el Primer Circuito, a la cual apelaron los hijos adoptivos de nuestra sentencia, que por estar igualmente divididos los cuatro jueces que entonces constituían esta Corte, confirmó la de la corte de distrito que declaró sin lugar la demanda de los hijos adoptivos.(¹) La apelación tuvo relativo éxito, gracias a la circunstancia de que ahora consta esta Corte de cinco jueces. La Corte de Circuito, en razón de la deferencia que en casos de derecho local guarda a nuestras decisiones dejó sin efecto nuestra sentencia.(²) Y nos devolvió el caso en la esperanza de que ahora pudiera resolverse por mayoría de los cinco jueces, incluyendo en su encomienda aquella parte de la sentencia que se refiere a los demandados Matos, Federal Land Bank, Land Bank Commissioner, Loíza Sugar Co., Marcial Suárez y Ceferino Osorio, con la cual los cuatro jueces de esta Corte que ya intervinieron en el caso estuvieron conformes.

Los hechos del caso, y la legislación y precedentes aplicables, se exponen ampliamente en las opiniones de los jueces Todd y Snyder, 64 D.P.R. 769 y 779.

Basta ahora recordar que Manuel Sosa dejó a su muerte dos hijos adoptivos, y dos naturales reconocidos, y en su tes-

---

(¹) *Sosa* v. *Sosa,* 64 D.P.R. 769.

(²) *Sosa-Millán* v. *Sosa-Escobar,* 154 F.2d 886. La Corte de Circuito a pesar de la regla que sigue de no intervenir con nuestras sentencias en casos de derecho local a menos que sean ''ineludiblemente erróneas'', consideró la posibilidad de decidir el caso de acuerdo con su propia opinión, en vista de que la nuestra estaba dividida, pero la rechazó por entender que ''la labor de armonizar las distintas disposiciones del Código Civil respecto a la herencia corresponde en primer término a la Corte Suprema de Puerto Rico, no a las cortes federales de apelación.'' Y consideró la posibilidad de confirmar la sentencia por no ser ésta ''ineludiblemente errónea'', pero la descartó por entender que ''ello privaría a los actuales litigantes de una decisión autorizada sobre la cuestión de derecho debatida.''

tamento declaró a sus hijos naturales sus únicos y universales herederos, dejando a sus hijos adoptivos legados por valor de $20,000 (algo menos de una séptima parte de la herencia), y la nuda propiedad de una sexta parte de la herencia. Los hijos adoptivos, alegando tener derecho a dos terceras partes de la herencia, iniciaron este pleito contra los hijos naturales, los otros legatarios, y terceras personas que adquirieron de los hijos naturales y legatarios derechos en los bienes de la herencia durante el curso de los dieciocho años que mediaron entre la partición de la herencia y la radicación de la demanda de los hijos adoptivos.

La corte de distrito declaró sin lugar la demanda por entender que, cuando concurren herederos forzosos, como lo son los hijos naturales, el hijo adoptivo carece de derecho alguno a la herencia.

## I

Los apelantes sostienen que, aun en concurrencia con herederos forzosos, y hasta donde no se perjudique la legítima de éstos, los hijos adoptivos tienen tanto derecho a la herencia como los hijos legítimos, es decir, tienen derecho a las dos terceras partes de la herencia.

El artículo 177 de nuestro Código Civil disponía, al igual que el código español, que el hijo adoptivo no adquiría derecho alguno a heredar a su adoptante, en ausencia de un pacto contrario en la escritura de adopción. Esa disposición fué expresamente derogada en el 1902, y en su lugar se sustituyeron los artículos que hoy se numeran 132 y 133, que rezan así:

"Artículo 132.—La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado.

"Artículo 133.—El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior."

Los artículos que se acaban de transcribir se copiaron, con ligeras variaciones, del artículo 214 del Código Civil de Louisiana, que en lo ·pertinente dispone:

". . . tal adopción no perjudicará los derechos de herederos forzosos.

"El adoptado tendrá en la herencia del adoptante todos los derechos de un hijo legítimo, con la excepción establecida anteriormente."

La derogación del artículo 177, y la sustitución de disposiciones que dan al adoptado los derechos en la familia de un hijo legítimo, sin perjuicio de los derechos de los herederos forzosos, constituyen una expresión clara de la intención legislativa de abandonar el principio expresado en el código español, tan reñido con. el concepto histórico de la adopción, de que el adoptado ningún derecho a la herencia adquiere (en ausencia de contrato), y abrazar el principio tan típico de la adopción, de que el adoptado adquiere derechos en la herencia.

Ni este Tribunal, ni ninguno de sus jueces, ha sugerido siquiera que la intención legislativa en el 1902 fuera otra. En la opinión del Juez Todd en este caso, 64 D.P.R. 774, se reconoce que el legislador en el 1902 quiso conceder y concedió al adoptado derechos hereditarios, aunque se llega a la conclusión de que esos derechos sólo existen en la sucesión intestada, y en ausencia de herederos forzosos.

Ahora bien, si como ya se resolvió en *Ex Parte Ortiz y Lluberas,* 42 D.P.R. 350, y en *Bardeguez* v. *Bardeguez,* 48 D.P.R. 713, y si como todos los actuales jueces de esta Corte entienden, el legislador en el 1902 confirió al adoptado ciertos derechos en la hacienda del adoptante ¿dónde están conferidos, y dónde limitados, esos derechos?

Se confieren, y se limitan, los derechos hereditarios del adoptado, en los artículos 132 y 133 del Código Civil, que ya han sido transcritos. Se confieren en el 133, al disponerse que el adoptado tendrá "en la familia del adoptante los derechos . . . de un hijo legítimo, con la excepción es-

tablecida en el artículo anterior.'' No existe ninguna otra disposición en Puerto Rico que confiera al adoptado derecho alguno a la herencia, testada o intestada, del adoptante. Si se confieren derechos hereditarios en ese artículo, es porque el legislador, al hablar de los derechos de un hijo legítimo en la familia, quiso incluir los derechos a la herencia, según se resolvió en *Ex Parte, Ortiz y Lluberas,* supra.

Que los ''derechos en la familia'' que adquiere el adoptado en la del adoptante comprenden derechos en la herencia testada e intestada queda además corroborado por el artículo 137 de nuestro Código. Ese artículo dispone que ''el adoptado conservará los *derechos* que le correspondan *en su familia,* natural . . .'' y según se demuestra con toda claridad en la opinión del Juez Todd en 64 D.P.R. 772 y 773([3]),

---

[3] ''. . . . Comentando Scaevola la disposición final del artículo 177 del Código Civil de España, concordante con el artículo 137 del nuestro, dice: '¿Y cuáles serán estos derechos? 1. El de recibir alimentos si el adoptante no pudiese suministrárselos. Ya hemos dicho que el derecho a los alimentos no se borra cuando se extingue la patria potestad, tiene su razón de ser en la necesidad y en los lazos de la sangre. 2. El de usar el apellido de la familia natural. 3. El de recibir donaciones por actos intervivos, quedando obligado a imputarlas en la legítima. 4. *El de suceder por testamento.* 5. *El de poder ser mejorado.* 6. *El de suceder abintestato.* 7. *El de pedir complemento de la legítima si el testador le hubiere dejado menos porción de la que necesariamente le corresponda.* 8. El de que le sean reservados los bienes del consorte difunto si el superviviente pasase a segundas nupcias. 9. El de acrecer la porción del heredero en los casos marcados por el Código. 10. El de recibir la herencia a beneficio de inventario o haciendo uso del de deliberar. 11. El de desempeñar la tutela en los casos en que fuere llamado por la ley a este cargo, y el de formar parte del Consejo con respecto a los parientes de su familia natural.' (Bastardillas nuestras.) 3 Scaevola, Cód. Civil, 449, 3ra. edición.

''Más conciso, pero al mismo efecto, Sánchez Román en sus Estudios de Derecho Civil, Tomo 5, pág. 1106 (Segunda Edición), dice que 'Esos derechos que el adoptado conserva en la familia natural, son todos: tales, como el de alimentos, cuando el adoptante no pudiera proveer a esta obligación, el de usar el apellido de la familia *así como todos los sucesorios, en sus distintas aplicaciones,* y, en general, cuantos el Código atribuye a la condición de individuo de una familia, excepto los relativos a la patria potestad, mientras el adoptante la ejerce.' (Bastardillas nuestras.)

''Tenemos, por lo tanto, que el hijo adoptivo, a virtud del artículo 137, conserva todos sus derechos en su familia natural.'' . . .

esos derechos que conserva el adoptado en su "familia na-
tural" incluyen, entre muchos otros, el derecho a heredar,
medie o no testamento.

Si entre los "derechos en la familia" se comprende el de
herencia en el artículo 137 ¿por qué no se comprende en el
133? Si no se comprende en el 133, ¿por qué se comprende
en el 137? Si el derecho de herencia no estuviera compren-
dido en ninguno de los dos artículos, tendríamos el resultado
anómalo de que el adoptado no tiene derechos hereditarios
ni en la familia adoptiva ni en la natural.(⁴) Pero ya hemos
visto, y nadie discute, que según el artículo 137, los "dere-
chos en la familia" incluyen los derechos de herencia, tes-
tada e intestada. No es irrazonable concluir que la misma
frase tiene el mismo alcance en el artículo 133, y que este
artículo por lo tanto confiere al adoptado derechos en la he-
rencia del adoptante, testada e intestada.

■■ Sentadas las premisas de que el legislador en el
1902 quiso conferir al adoptado ciertos derechos en la he-

---

(⁴)Dista mucho de ser anómalo, por el contrario, el que el adoptado conserve
sus derechos hereditarios en la familia natural y adquiera además derechos he-
reditarios en la familia adoptiva. La adopción por su naturaleza, y aparte de
sus efectos legales, concede al adoptado, hasta cierto punto, un *status* privile-
giado, en que se le tiene por hijo en la familia adoptiva, y en la natural.

En cuanto a sus efectos legales la adopción confiere al adoptado privilegios
que no tiene ningún otro hijo. El derecho a alimentos, por ejemplo, lo disfruta
en ambas familias según nuestro Código. Cierto es que en la familia del adop-
tante su derecho a alimentos está subordinado al derecho preferente de los hijos
y padres del adoptante (artículo 136 del Código Civil). Pero también el derecho
del hijo adoptivo a heredar al adoptante está subordinado en Puerto Rico al de-
recho preferente de los herederos forzosos a la legítima. Por otra parte, el que
el adoptado conserve los derechos hereditarios en su familia natural, y al mismo
tiempo goce del privilegio de adquirir derechos en la herencia del adoptante, es
un principio bien establecido en la historia de la adopción. Ese privilegio lo
disponía la ley de Louisiana en el 1902, perduró hasta el 1938, y quizás aún
perdure. (Véase 13 Tulane Law Review 293). Y en Filipinas (*Borres y Barza
v. Panay*, 42 Jur. Fil. 677, págs. 691, 692) el hijo adoptivo tiene todos los de-
rechos del hijo legítimo tanto en la herencia del adoptante como en la de sus
padres naturales. También en el derecho romano, las Leyes de Partida, la Noví-
sima Recopilación, y los códigos de Francia, Italia, Suiza y Guatemala, por
ejemplo, conserva el hijo adoptivo sus derechos hereditarios en la familia natural
mientras adquiere derechos, más o menos amplios, en la herencia del adoptante.
(3 Scaevola 434 *et seq.*, 2 Manresa 86, 13 Tulane L. Rev. 293).

rencia del adoptante, y que esos derechos se confieren en el artículo 133 y se limitan, según ese artículo, por el que le precede, resta determinar el alcance de esos derechos. El artículo 133 dispone que serán los mismos que tiene el hijo legítimo. El artículo 737 expone que los hijos legítimos tienen derecho, como su porción de la herencia de la cual el testador no puede privarles, a las dos terceras partes de la herencia. Es cierto que ni el artículo 737 del Código Civil, ni ninguno de los artículos que hablan de la legítima y de los herederos forzosos, menciona el hijo adoptivo. Tal mención es innecesaria, como es innecesaria la mención del hijo legitimado, que tampoco se menciona. Es innecesaria porque ya el artículo 133 dice que el hijo adoptivo tiene los derechos del legítimo, al igual que el 121 dice que el legitimado disfrutará de todos los derechos del legítimo. Luego el hijo adoptivo, como el legitimado, tiene su legítima fijada en el Código: la legítima que corresponde al hijo legítimo, y que comprende las dos terceras partes de la herencia. Pero el artículo 133 y el 132, disponen que ese derecho del hijo adoptivo a las dos terceras partes de la herencia no es absoluto. Está sujeto a una limitación: que no perjudique los derechos de herederos forzosos, los cuales subsistirán como si no hubiese mediado la adopción. Puede decirse, por lo tanto, que el hijo adoptivo tiene derecho a una legítima de dos terceras partes, derecho que podrá menguarse, y en algún caso eliminarse, cuando la legítima preferente de uno o más herederos forzosos consuma parte de esa porción, o toda esa porción.

En el caso de autos la concurrencia de herederos forzosos no mengua la legítima de dos terceras partes que corresponde a los hijos adoptivos. Concurren hijos naturales. La legítima de los hijos naturales varía según concurran o no descendientes o ascendientes legítimos. Si concurren descendientes legítimos, al hijo natural corresponde la mitad de la cuota del legítimo, siempre que quepa en el tercio de libre

disposición.([5]) Si concurren sólo ascendientes legítimos, los hijos naturales tienen derecho a una cuarta parte de la herencia, sin perjuicio de la cuota del viudo.([6]) Si no concurren ni ascendientes ni descendientes legítimos, a los hijos naturales corresponde una tercera parte de la herencia como legítima.([7]) En este caso, es de aplicación el artículo 769, que fija la legítima de los hijos naturales en ausencia de descendientes y ascendientes legítimos en una tercera parte, no porque, como se dijera en la opinión del Juez Snyder en 64 D.P.R. 788, al hijo adoptivo no se le considere como descendiente legítimo (el artículo 133 precisamente dispone que ha de considerársele como hijo legítimo), sino porque el artículo 132 dispone que los derechos de los herederos forzosos "subsistirán como si la adopción no se hubiese verificado." Por consiguiente, al determinar la legítima de herederos forzosos cuando existen hijos adoptivos, se parte de la base de que no ha habido adopción. Partiendo de esa base, no hay en el caso de autos descendientes legítimos, y es de estricta aplicación el artículo 769.

Siendo la legítima de los hijos naturales en el caso de autos una tercera parte de la herencia, no se perjudican sus derechos, y subsisten como si no se hubiese verificado la adopción, al reconocerse a los hijos adoptivos su legítima de dos terceras partes.

Forzoso es admitir que el resultado al que se acaba de llegar es incongruente con el resultado del caso de *Lugo, Ex Parte; Ortiz, etc., Opositores*, 64 D.P.R. 868. En ese caso, resuelto pocos días después de nuestra decisión original en el caso de autos, los cuatro jueces que entonces integraban este Tribunal estuvieron conformes, aunque por razones distintas, en que el hijo adoptivo que concurre con herederos forzosos en una sucesión intestada nada hereda, por tener

---

([5]) Artículo 767 del Código Civil (Ed. de 1930).
([6]) Artículo 768 del Código Civil, (Ed. de 1930).
([7]) Artículo 769 del Código Civil, (Ed. de 1930).

los herederos forzosos derecho a toda la herencia, y por disponer el artículo 132 que la adopción no perjudicará los derechos que correspondan a los herederos forzosos.

Si como se acaba de resolver en el caso de autos, el adoptado tiene derecho, al concurrir con hijos naturales en la sucesión testada, a dos terceras partes de la herencia, no importa cual fuese la voluntad del testador, resulta anómalo que, de no mediar testamento que le niegue ese derecho, el adoptado nada adquiera. Podría decirse entonces que el derecho del adoptado, en concurrencia con un heredero forzoso, sólo existe cuando el adoptante pretenda quitárselo. En otras palabras, si el adoptante nada dice, si no otorga testamento, nada adquiere el adoptado, y todo lo adquiere el heredero forzoso. Pero si el adoptante llega a expresar en testamento su voluntad de dejar toda su herencia a ese mismo heredero forzoso, basta esa expresión (innecesaria puesto que de no haber testado el adoptante todo lo heredaría el heredero forzoso) para que el adoptado tenga derecho a dos terceras partes de la herencia, y se limite al heredero forzoso a su legítima. Tal es, sin embargo, el resultado al que nos lleva el caso de *Lugo,* al compararlo con el que ahora se resuelve.

Incongruente como es el resultado de este caso con el que se obtuvo en el de *Lugo* podría justificarse esa incongruencia si nuestra legislación la exigiera. Pero no la exige. Basta interpretarla literalmente, como se ha interpretado en el estado de donde proviene, Louisiana, en *Alexander* v. *Gray,* 181 So. 639, para ver que no fué bien aplicada en el caso de *Lugo.* Dicho caso se basa en la premisa de que en la sucesión intestada "los derechos que correspondan a los herederos forzosos" a que se refiere el artículo 132, derechos que la adopción no puede perjudicar, comprenden la totalidad de la herencia. No es así. Los "derechos que correspondan a los herederos forzosos" se definen con toda claridad en la sección quinta, capítulo segundo, título tercero del

libro tercero del Código Civil (artículos 735 al 750). El heredero forzoso sólo tiene derecho a la legítima, y a los incidentes que de ella fluyen. "La legítima", dice el artículo 735, "es la porción de bienes de que el testador no puede disponer por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos." Puesto que la frase "los derechos que correspondan a los herederos forzosos" utilizada en nuestro artículo 132 es equivalente al "derecho de determinados herederos a la legítima y sus incidentes," el significado literal del artículo 132 es el siguiente:

"La adopción no perjudicará en ningún caso al derecho de determinados herederos a la legítima y sus incidentes, el cual subsistirá co mo si la adopción no se hubiese verificado."

Así se interpretó el artículo 214 del Código de Louisiana, que en lo pertinente en nada difiere del nuestro,(³) en *Alexander* v. *Gray,* supra, donde, como en el caso de *Lugo,* se trataba de una herencia intestada, concurriendo herederos forzosos con el adoptado, resolviéndose que el derecho de los herederos forzosos que dicho artículo garantizaba era el derecho a la legítima, y que, en tanto en cuanto no se per-

---

(³)El Código de Louisiana dispone que la adopción "no perjudicará los derechos de herederos forzosos." El nuestro que "no perjudicará *en ningún caso* los derechos que correspondan a los herederos forzosos, *"y que subsistirán como si la adopción no se hubiera verificado."* Las frases adicionadas por nuestra legislatura no amplían el concepto de los "derechos que correspondan a los herederos forzosos." Sencillamente hacen énfasis en que esos derechos de que habla la ley de Louisiana subsist'rán *en todo caso,* y subsistirán *como si no se hubiese verificado la adopción.* Pero el énfasis que en Puerto Rico se pone en la conservación de los derechos de herederos forzosos en nada cambia el efecto de la disposición de la Ley de Louisiana. Es obvio que en Louisiana, también, se garantizan esos derechos *en todo caso,* puesto que no se exceptúa ningún caso. Y es obvio que en Louisiana, también, subsisten esos derechos (sean los que sean) como si no hubiese mediado adopción. Si se permitiera en Louisiana que la presencia de la adopción menguara esos derechos, tendríamos que la adopción "perjudicaría" esos derechos, y eso lo prohibe expresamente la ley de Louisiana. En otras palabras, si la adopción no perjudica los derechos de los herederos forzosos, entonces es inevitable la conclusión, y superfluo expresarla, de que esos derechos subsisten como si no hubiese mediado adopción. No existe, pues diferencia, en este aspecto, entre la ley de Louisiana y la nuestra.

judicara esa legítima, el adoptado tenía en la herencia intestada los derechos de un hijo legítimo.

No se diga que en la herencia intestada no cabe nunca hablar de legítima, ni de herederos forzosos. Es perfectamente propio hablar de la legítima en todo caso en que se pretenda perjudicar los derechos de herederos forzosos, aunque no medie testamento. Por ejemplo, si una persona que muere intestada ha hecho una donación, sus herederos forzosos pueden impugnarla en tanto en cuanto exceda de su legítima. Así lo disponen los artículos 578, 743 y 747 del Código Civil. El artículo 578 dispone que: '' . . . ninguno podrá dar ni recibir, por vía de donación, más de lo que pueda dar o recibir por testamento. La donación será inoficiosa en todo lo que exceda de esta medida.'' Ese mismo concepto pudo haberlo expresado el legislador así: ''La donación no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos.'' Y ese fué el lenguaje que utilizó el legislador al limitar los derechos del adoptado. Así ha garantizado el legislador la legítima de herederos forzosos contra el perjuicio que de otra manera pudiera causarse a esos herederos no sólo por testamento, sino por la donación, o por la adopción. Y en la adopción, como en el testamento, como en la donación, la garantía se limita a aquella porción de la herencia que el Código garantiza, la única que *garantiza:* la legítima.

El caso de *Lugo* fué, por lo tanto, erróneamente resuelto.(°) El hijo adoptivo tiene en la herencia del adoptante, testada o intestada, todos los derechos del hijo legítimo, en tanto en cuanto esos derechos no perjudiquen la legítima preferente de otros herederos forzosos.

---

(°) Podría objetarse tal vez que todo lo que aquí se dice respecto al caso de Lugo es *obiter dictum.* Pero la realidad es que el resultado en el caso de Lugo es uno de los principales argumentos con que nos confrontamos al considerar de nuevo el caso de autos, y no nos ha parecido propio eludir ese argumento.

## II

Sentado el derecho de los demandantes a las dos terceras partes de la herencia, resta determinar el remedio o remedios que proceda concederles.

██ Solicitan en primer término los demandantes que se anule la institución de herederos hecha en el testamento de Manuel Sosa. No procede la nulidad solicitada porque, como se expone en la opinión del Juez Snyder en 64 D.P.R. 789, 790, no hubo pretensión de los hijos adoptivos, ya que algo se les dejó en el testamento.

En la opinión del Juez Snyder, 64 D.P.R. 791, 792, y siguiendo el razonamiento de *Bardeguez* v. *Bardeguez, supra,* se ofreció un fundamento adicional para negar a los demandantes su pretensión de que se declare nula la institución de herederos, a saber, que sólo tienen derecho a anular la institución de herederos por preterición los herederos forzosos en línea recta (artículo 742 del Código Civil), y que los hijos adoptivos carecen de ese derecho por no ser descendientes "en línea recta."([10]) No era necesario ese fundamento adicional, ya que, como hemos resuelto, no ha habido preterición de los hijos adoptivos y por esa sola razón es improcedente anular la institución de herederos. Y ese fundamento adicional, como el *dictum* del caso de *Bardeguez* en que se fundó, lo consideramos erróneo. Como ya hemos visto, el adoptado tiene todos los derechos hereditarios del hijo legítimo, sin perjuicio del derecho preferente de otros herederos forzosos a su legítima. Entre los derechos del

---

([10]) Conforme indican los apelantes, lo que sobre este extremo se dice en el caso de Bardeguez no pasa de ser un *dictum*, ya que el resultado de dicho caso hubiese sido exactamente el mismo si se hubiese declarado nula la institución de herederos. Fuese nula o no la institución de herederos, el heredero preterido sólo tenía derecho a una tercera parte de la herencia, y la otra heredera a otra tercera parte, por concepto de legítima. El tercio de libre disposición siempre correspondía a la heredera favorecida por el testador, ya que la nulidad de la institución de herederos no afecta la validez del testamento en sí. Véase el artículo 693 del Código Civil.

hijo legítimo está el de anular la institución de herederos si es preterido (Artículo 742 del Código Civil), pues el hijo legítimo es uno de los herederos forzosos en línea recta. Puesto que el hijo adoptivo adquiere los derechos del hijo legítimo en la herencia del adoptante, adquiere, entre otros, el derecho que al hijo legítimo confiere el artículo 742. Véase a Muñoz Morales, Apuntes al Código Civil de Puerto Rico, 10 Revista Jurídica de la Universidad de Puerto Rico 434; *Estate of Winchester*, 140 Cal. 468; *Warren v. Prescott*, 84 Me. 483, 30 Am. St. Rep. 370.

## III

■■■ Tampoco procede declarar nula la partición de los bienes de la herencia de Manuel Sosa, por los fundamentos expuestos en la opinión del Juez Snyder, 64 D.P.R. 792 al 797, y particularmente en vista de las disposiciones del artículo 1033 del Código Civil. Pero aunque fuese nula la partición, los terceros que actuaron a base del testamento y de las constancias del Registro de la Propiedad no pueden ser perjudicados por su nulidad, ya que ni del testamento ni del Registro de la Propiedad surge indicio alguno de la concurrencia de hijos adoptivos en la herencia. Los apelantes insisten, sin embargo, en que del Registro Civil aparecía el hecho de las adopciones y sugieren que si los terceros hubiesen sido diligentes y hubiesen examinado el Registro Civil se hubiesen enterado de ese hecho. No es así. Por diligentes que hubiesen sido los terceros no se hubiesen enterado de la adopción por las constancias del Registro Civil, ya que ese hecho no aparece al margen de la inscripción del adoptante, y sí sólo al margen de la inscripción de los adoptados,([11]) y quien carece de fundamento para sospechar la

---

([11]) De la prueba de los propios demandantes aparece que la orden de la corte aprobando la adopción dispuso su inscripción al margen de la inscripción de nacimiento del adoptado, y que así se hizo. No aparece que al margen de la inscripción del adoptante se hiciera anotación alguna.

existencia de una adopción no tiene base para investigar la inscripción del adoptado.

■ Los apelantes arguyen que, si no pueden perseguir aquellos bienes de la herencia que están en manos de terceros, se les privaría de su propiedad sin el debido proceso de ley. Pero es que el derecho de propiedad que ellos invocan, o sea, su legítima, le es concedido por el Código Civil. Y al conceder ese derecho el Código, lo limita al disponer (1) que no se anulará la institución de herederos de no mediar la preterición de un heredero forzoso (2) que no se dejará sin efecto la partición, aunque en ella no intervenga alguno de los herederos, si no se prueba mala fe o dolo. La contención de los apelantes viene pues a ser que es anticonstitucional aquella parte del Código que limita los derechos que otra parte le confiere. Pero es que ni nuestra Acta Orgánica ni la Constitución de Estados Unidos garantiza el derecho de nadie a heredar. Los derechos de los apelantes, que son puramente estatutarios, pueden ser limitados, o eliminados totalmente, por otras disposiciones estatutarias.

### IV

Aunque, como hemos visto, no tienen los apelantes derecho a que se decrete la nulidad de la institución de herederos, ni de la partición, sí tienen derecho a recobrar de los coherederos y legatarios demandados aquella parte de la herencia que éstos hayan percibido en perjuicio de la legítima de los apelantes, en la forma en que se explica detalladamente en la opinión del Juez Snyder en 64 D.P.R. 799 a 801. Como allí se indica, el actual estado del récord no nos permite dictar ahora una sentencia definitiva. Lo que procede, por lo tanto, es (a) confirmar la sentencia apelada en cuanto a los demandados Antonio Matos, Federal Land Bank of Baltimore, The Land Bank Commissioner, Loíza Sugar Co., Marcial Suárez y Ceferino Osorio, (b) revocar la sentencia en cuanto a los otros demandados y (c) devolver el caso a

la corte de distrito para ulteriores procedimientos no inconsistentes con esta opinión.

Noviembre 5, 1946.

Ha regresado el caso de los hijos adoptivos de su peregrinación a Boston. Allá establecieron un precedente[1] y acá obtuvieron legislación judicial de carácter e implicaciones extraordinarias.

Los motivos de mi disenso en este caso pueden verse expuestos en mis opiniones en *Sosa* v. *Sosa,* 64 D.P.R. 769, y en *Lugo, Ex Parte; Ortiz, etc.,* 64 D.P.R. 868, y no creo necesario repetir o ampliar lo allí dicho. Sí deseo expresar mi inconformidad absoluta con la forma en que se pretende revocar el caso de *Lugo, Ex Parte; Ortiz,* supra. Se admite por la mayoría que todo lo que contiene su opinión en relación con dicho caso es *"obiter dictum".* Eso no obstante se asegura que el caso de *Lugo* fué "erróneamente resuelto."[2] Por mi parte ratifico mi opinión en dicho caso y considero que ella, y la del Juez Asociado Sr. De Jesús, por otros fundamentos, rebaten con éxito los argumentos de la mayoría en el presente caso.

Disiento de la opinión de la mayoría, además, porque considero que si bien las cortes al interpretar estatutos pueden, como decía el Juez Holmes, legislar "intersticialmente", no deben hacerlo cuando el estatuto es tan defectuoso que, para interpretarlo y aplicarlo, hay que legislar judicialmente cada vez que surge un caso bajo el mismo. Y eso es lo que ocurre con los hijos adoptivos en Puerto Rico al resolverse que de hecho son o por lo menos equipararlos a los hijos legítimos. En tanto en cuanto a su porción hereditaria se refiere, si el

---

[1] La Corte de Circuito nos devolvió el caso concediendo una nueva vista a pesar de que parte de la sentencia apelada fué unánime y dicha concesión podía afectar derechos adquiridos.

[2] A mi juicio esta conclusión, basada en un *obiter,* constituye, con el debido respeto, un *obiter* mayor.

adoptivo es igual que un hijo legítimo, dicha porción debería ser uniforme en todo momento. Pero no es así de acuerdo con la opinión de la mayoría. Depende de que no perjudique a los herederos forzosos y para no perjudicarlos es que entra en juego, no la ley, sino las cortes, para determinar en cada caso la cuantía de dicha porción. Hemos llegado al máximum en cuanto a legislar judicialmente se refiere.

Debido a los cambios que ocurren en este tribunal—últimamente con bastante frecuencia[3]—y la posibilidad de variadas opiniones en el futuro sobre los debatidos e inciertos derechos hereditarios de los hijos adoptivos, tanto en la sucesión testada como en la intestada, creo que la Asamblea Legislativa de Puerto Rico debe enmendar todos los artículos pertinentes en nuestros códigos, relacionados con los hijos adoptivos, para fijar con claridad esos derechos. De no hacerlo continuará reinando la incertidumbre y las cortes legislando.

---

[3] Después de emitida la opinión de la mayoría ocurrió una vacante. Puede ocurrir otra. Si los dos nuevos magistrados que se nombren coincidieran con mi opinión, al plantearse otro caso sobre los derechos hereditarios de los hijos adoptivos, quedaría revocada la doctrina que acaba de establecerse.