CARMEN AURORA VALLADARES DE SABATER, peticionaria y recurrida, *v.* PAULA MARINA, conocida por MARINA LÓPEZ MUÑIZ y SUCESIÓN DE FRANCISCA LÓPEZ MUÑIZ, opositores y recurrentes. CARMEN AURORA VALLADARES DE SABATER, peticionaria y recurrida, *v.* CARLOS RIVERA LAZÚ ET AL., opositores y recurrentes.

*Números:* R-62-109, R-62-111    *Resueltos:* 14 de octubre de 1963

*Herminio Concepción de Gracia, Antonio Peña, y J. M. Valentín Esteves,* abogados de los recurrentes; *José O. Sabater, y José Sabater,* abogados de la recurrida.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Dispone el Art. 138 del Código Civil, según enmendado por la Ley Núm. 86 de 15 de junio de 1953 (Leyes, pág. 305), 31 L.P.R.A. sec. 539, que las adopciones celebradas bajo la legislación vigente hasta 1953 se regirían por dicha legislación y *surtirían todos sus efectos según la misma,* sin limitación de ningún género. Para determinar los derechos sucesorios de un adoptado en 1925[1] en el caudal relicto al fallecimiento en 1960 de una hermana uterina de su padre adoptante debemos, por tanto, recurrir a lo preceptuado en los Arts. 202 y 203 del Código Civil de 1902 (Estatutos Revisados 1902, págs. 886-887).[2] Pero antes de discutir las cuestiones culminantes que envuelven estos recursos haremos breve referencia a los hechos que han motivado la controversia.

Doña Juana María Rivera, también conocida por Manuela, falleció intestada y en estado de soltería en Mayagüez, P.R.,

[1] En la escritura de adopción se hizo constar expresamente que "en virtud de esta adopción podrá usar con su apellido el del adoptante y gozar de los beneficios que le concede el Código Civil vigente."

[2] Corresponden a los Arts. 132 y 133 del Código Civil, ed. 1930. Mediante la Ley Núm. 353 de 13 de mayo de 1947 (Leyes, pág. 681), consecuencia de nuestra opinión en *Sosa* v. *Sosa,* 66 D.P.R. 606 (res. en 26 de julio de 1946), se derogó el Art. 132 que disponía que "La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiere verificado," y se enmendó el Art. 133 para que leyera "El adoptado tendrá en la familia del adoptante los deberes y la consideración de un hijo legítimo," eliminándose la reserva del texto hasta entonces vigente sobre "la excepción establecida en el artículo anterior."

el día 31 de diciembre de 1960, sin tener descendientes o ascendientes de clase alguna. Abierto el abintestato se reclamó la herencia por a) doña Carmen Aurora Valladares de Sabater; b) doña Marina López Muñoz y sus cinco sobrinos de apellidos Esteves López; y, c) los hermanos de apellidos Rivera Lazú. La señora Valladares adujo su condición de hija adoptiva de don Edardo o Eduardo Valladares Rivera, hermano uterino de la extinta; doña Marina López, invocó su parentesco de prima segunda con la causante, al igual que los hermanos Rivera Lazú; (3) y los hermanos Esteves López señalaron un pretendido derecho de representación, por ser hijos de doña Francisca López Muñoz, una prima segunda premuerta. Se une como apéndice a esta opinión un cuadro demostrativo de la genealogía de las partes.

El tribunal a quo declaró a la señora Valladares única y universal heredera de doña Juana María Rivera, con exclusión de los recurrentes. (4) La posición de los recurrentes es que antes de enmendarse en 1947 el Art. 132 del Código Civil el hijo adoptivo sólo tenía derechos hereditarios en cuanto al padre adoptante, pero no en cuanto a parientes de éste, ya que la sucesión en líneas sólo se da en beneficio de los parientes consanguíneos.

▆▆ Corresponde observar que, conforme a la genealogía, la señora Valladares es pariente colateral de la causante en tercer grado, por ser doña Higinia Rivera el tronco común

---

(3) A pesar de que en la petición sobre declaratoria de herederos presentada por Carlos Rivera Lazú se alegó que él y sus hermanos eran primos hermanos de doña Manuela Rivera, la prueba documental estableció que su parentesco era el de primos segundos.

(4) De la bien razonada opinión emitida por el tribunal de instancia parece deducirse que el reconocimiento de la recurrida como única heredera es por derecho de representación de su padre premuerto, hermano uterino de la causante. Gran parte del alegato de los recurrentes se dedica a refutar esta posición. En verdad cualquier llamamiento de la recurrida a la herencia sería por derecho propio, y no por derecho de representación, que siempre supone la concurrencia en una sucesión de herederos de inferior grado con herederos de grado superior o más próximo.

a ambas; los hermanos Rivera Lazú y doña Paula Marina López Muñiz son colaterales en quinto grado, y los hermanos Esteves López, lo son en sexto, ya que el tronco común en cuanto a todos ellos es don Manuel Rivera. Arts. 878, 879 y 881 del Código Civil, ed. 1930, 31 L.P.R.A. secs. 2601, 2602 y 2604. Como en la sucesión intestada el pariente más próximo en grado excluye al más remoto, salvo el derecho de representación en los casos en que deba tener lugar, Art. 884 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 2607, *Romero* v. *Ruiz*, 8 D.P.R. 27 (1905), de prevalecer la tesis de que la adopción crea lazos de parentesco entre el adoptado y los familiares del adoptante, la señora Valladares excluiría a los demás reclamantes. Conviene aclarar que en virtud de los principios enunciados los hermanos Esteves López no pueden ser investidos como herederos legítimos de la causante por encontrarse en un grado inferior de parentesco—el sexto grado colateral —toda vez que el derecho de representación en la línea colateral sólo tendrá lugar en favor de los hijos de hermanos del causante, que se encuentran en el tercer grado. Art. 888 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 2622.

Nuestras anteriores opiniones sobre los derechos sucesorios de los hijos adoptivos—*Ex parte Ortiz y Lluberas*, 42 D.P.R. 350 (1931); *Bardeguez* v. *Bardeguez*, 48 D.P.R. 713 (1935); *Sosa* v. *Sosa*, 64 D.P.R. 769 (1945); *Lugo, Ex parte; Ortiz, etc., Opositoras*, 64 D.P.R. 868 (1945); *Sosa* v. *Sosa*, 66 D.P.R. 606 (1946); *Ginés* v. *Ayala Rodríguez*, 84 D.P.R. 245 (1961), no son de estricta aplicación, pues en todos ellos se trataba a) de sucesiones en que el adoptivo concurría a la herencia con herederos forzosos o testamentarios; y b) de la disposición de la herencia del propio padre adoptante. Como hemos señalado en la relación de hechos que precede, en el presente caso el adoptado no concurre con herederos forzosos, y tampoco se trata del caudal relicto al fallecimiento del padre adoptante, sino de una hermana de éste. Sin embargo, como veremos, algunas expresiones contenidas en di-

chas opiniones informan la norma procedente para resolver los actuales planteamientos.

El derecho aplicable, según afirmamos, son los Arts. 202 y 203 del Código Civil de 1902, que textualmente leen así:

"Art. 202.—La adopción no perjudicará en ningún caso los derechos que correspondan a los herederos forzosos, y que subsistirán como si la adopción no se hubiese verificado."

"Art. 203.—El adoptado tendrá en la familia del adoptante los derechos y deberes y la consideración de un hijo legítimo, con la excepción establecida en el artículo anterior."

Al adoptarse el Código Civil de 1902, una de las pocas materias en que no se siguió estrictamente el Código Civil Español fue la de adopción, especialmente en cuanto se refiere a los derechos hereditarios de los hijos adoptivos.[5] Así, los Arts. 202 y 203 de 1902 (132 y 133 del Código revisado de 1930) no tienen precedente en el Código Español, sino que fueron injertados en la institución copiándose el primero de la frase final del párrafo primero del Art. 214 del Código Civil de Luisiana de 1870, y el segundo, del párrafo tercero

---

[5] Explicando esta situación, dijimos en *Sosa v. Sosa*, 66 D.P.R. 606, 610 (1946): "La derogación del artículo 177 [C.C.E.], y la sustitución de disposiciones que dan al adoptado los derechos en la familia de un hijo legítimo, sin perjuicio de los derechos de los herederos forzosos, constituyen una expresión clara de la intención legislativa de abandonar el principio expresado en el código español, tan reñido con el concepto histórico de la adopción, de que el adoptado ningún derecho a la herencia adquiere (en ausencia de contrato), y abrazar el principio tan típico de la adopción, de que el adoptado adquiere derechos en la herencia."

El derecho a heredar del hijo adoptivo dependía bajo el anterior Art. 177 del Código Civil Español—y aún depende bajo el Art. 174 del vigente código—de la obligación que hubiese asumido el adoptante de instituirle heredero. Se trataba pues de una especie de pacto sucesorio o sucesión contractual. Véanse, Soto Nieto, Francisco, *Derechos Sucesorios del Hijo Adoptivo en el Código Civil Español* (Ed. Reus, 1962); Gambón Alix, Germán, *La Adopción* (Ed. Bosch, 1960), págs. 274, 299; De la Cámara, Manuel, *Los derechos hereditarios del hijo adoptivo en el Código Civil*, Revista de Derecho Privado, tomo XXXV, págs. 89-108 (1951); Castán, José, *La Sucesión Ab Intestato del Hijo Adoptivo*, Revista General de Legislación y Jurisprudencia, tomo 128, págs. 39-60 (1916).

del citado artículo(6) Es significativo, sin embargo, que en cuanto a este último nuestro precepto emplea el concepto familia en vez del de "estate" que aparece en Luisiana. Respecto a este particular comenta Muñoz Morales: (7)

"No podemos suponer que los redactores y traductores del Código de 1902 dejaron de anotar la apreciable diferencia que entre ambos conceptos existe; pues mientras el concepto *estate* se refiere a la parte material, ó sea a los bienes, propiedades, patrimonio, herencia, etc. . . . .; el concepto 'family' se refiere a la parte personal o sea al linaje, genealogía o *relación de parentesco* entre los individuos."

En el segundo caso de *Sosa*, 66 D.P.R. 606 (1946), identificamos el Art. 133 como la fuente de los derechos hereditarios del hijo adoptivo, con especial énfasis al texto que dice que el adoptado tendrá "en la familia del adoptante los derechos . . . de un hijo legítimo." Añadimos que *la única limitación a ese derecho* es la que contiene el mismo precepto, que se refiere a que no se cause perjuicios al derecho de otros *herederos forzosos* que subsiste como si no se hubiera verificado la adopción.

■ En *Bardeguez* v. *Bardeguez*, 48 D.P.R. 713 (1935), al considerar si un hijo podía invocar el Art. 742 del Código Civil relativo a la preterición de herederos *en línea recta*, y después de hacer referencia a que *"línea* en Derecho civil significa una serie u orden de personas unidas *en parentesco natural* que tiene su origen en *la comunión de sangre"* (pág.

---

(6) En la parte pertinente, el Art. 214 del Código Civil de Luisiana de 1870 (Dart, *Louisiana Civil Code Annotated* (1932), pág. 81), leía como sigue:

"*Any person may adopt another as his child, except those illegitimate children whom the law prohibits him from acknowledging; but such adoption shall not interfere with the right of forced heirs.*
". . .
"*The person adopted shall have all the rights of a legitimate child in the estate of the person adopting him except as above stated.*
". . ."

(7) *Reseña Histórica y Anotaciones al Código Civil de Puerto Rico,* Libro Primero (1947), pág. 420.

721), sostuvimos que el hijo adoptivo no puede considerarse como un heredero forzoso en línea recta "por ser muy distintos los vínculos que lo unen a su padre por adopción" (pág. 722). Once años después, en *Sosa* v. *Sosa*, 66 D.P.R. 606, 618–619 (1946), manifestamos nuestra inconformidad con el lenguaje transcrito y dijimos: "Como ya hemos visto, el adoptado tiene *todos* los derechos hereditarios del hijo legítimo, sin perjuicio del derecho preferente de otros herederos forzosos y su legítima. Entre los derechos del hijo legítimo está el de anular la institución de herederos si es preterido [cita], pues el hijo legítimo es uno de los herederos forzosos en línea recta." Es innegable que uno de los derechos del hijo legítimo en la sucesión intestada es el de excluir en el orden sucesorio a herederos de grado inferior.

Para poder apreciar mejor la improcedencia del planteamiento de los recurrentes—en Puerto Rico la adopción no crea lazos de parentesco con los familiares del adoptante— baste decir que si lo apuráramos hasta el extremo tendríamos entonces que sostener que ningún derecho hereditario podría reconocérsele al hijo adoptivo en la sucesión intestada pues ésta se defiere por la preferencia en determinada *línea* en que se encuentran los llamados a la herencia. Subyacente en nuestras decisiones admitiendo derechos al hijo adoptivo en la sucesión intestada está la proposición de que hemos reconocido la existencia de parentesco, si bien sujeto el derecho a que no se perjudique a otros herederos forzosos, *Ginés* v. *Ayala Rodríguez*, supra. (⁸)

Aducen además los recurrentes que, habiéndose tomado el Art. 203 del Art. 214 de Luisiana, debemos recurrir a otras disposiciones de este último cuerpo legal para precisar el con-

---

(⁸) El Art. 174 del Código Civil Español vigente, según redactado de nuevo por la Ley de 24 de abril de 1958, (Medina y Marañón, *Leyes Civiles de España* (Ed. Reus 1958), pág. 104), dispone *expresamente* que la adopción produce parentesco entre el adoptante, de una parte, y el adoptado y sus descendientes de otra, pero no respecto a la familia del adoptante, con excepción de lo dispuesto sobre impedimentos matrimonales.

tenido de "los derechos y deberes y la consideración de un hijo legítimo" que se refieren al hijo adoptivo. Hacen referencia entonces al Art. 214.2 que lee: "El hijo adoptivo y sus descendientes legítimos no adquieren derecho a heredar en la sucesión de los parientes consanguíneos del adoptante," y a su predecesor que en la parte pertinente decía: "El adoptado no adquiere derechos hereditarios en los bienes de los parientes del adoptante . . ." Sin embargo, estimamos que esta contención, lejos de favorecer, perjudica la posición de los recurrentes, pues, ambas enmiendas al Art. 214 original—del Código Civil de 1870—que fue el que sirvió de modelo a nuestros Arts. 202 y 203, son posteriores a 1902, [9] y bien pueden significar que se creyó necesario que la ley expresamente contuviera la prohibición de heredar a los parientes consanguíneos del adoptante.

Atendidos los propósitos de la adopción, el texto del Art. 203 que se refiere específicamente al concepto familia y no exclusivamente al de herencia para fijar la posición del adoptado como la de un hijo legítimo, la trayectoria de nuestra doctrina desde el caso de *Ex parte Ortiz y Lluberas*, supra, y el principio hermenéutico allí enunciado de que los estatutos sobre adopción deben ser interpretados liberalmente a favor del hijo adoptivo, resolvemos que en Puerto Rico, aun antes de 1947, la adopción creaba lazos de parentesco entre el adoptado y los familiares del adoptante con las consiguientes consecuencias jurídicas en el orden sucesoral. No puede ignorarse que el propósito que anima la adopción es crear una relación permanente revestida de ciertas consecuencias jurídicas. Para todos los fines, el adoptado se consideraba como un

---

[9] West's LOUISIANA STATUTES ANNOTATED, Civil Code, vol. 2, pág. 132.
Para el desarrollo del derecho hereditario de los hijos adoptivos en Luisiana, véanse, Bugea, *Adoption in Louisiana–Its Past, Present, Future*, 3 Loyola L. Rev. 1 (1945) y 23 Tul. L. Rev. 38 (1948); y 19 La. L. Rev. 58 (1958); 33 Tul. L. Rev. 48 (1958); 29 Tul. L. Rev. 136 (1954); y 24 Tul. L. Rev. 419 (1950).

hijo legítimo del adoptante, y es ese el *status* familiar que debe reconocérsele a todos los fines legales.

Como los opositores recurrentes no son herederos forzosos ni legitimarios de la causante, no entra aquí en juego "la única limitación" que respecto a los hijos adoptivos priva en el orden sucesoral.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de Mayagüez, en 2 de abril de 1962.*

APÉNDICE

*Cuadro Genealógico de las Partes Litigantes*